AUSTIN B. FULLER ET UX. *vs.* THE METROPOLITAN LIFE INSURANCE COMPANY OF NEW YORK.

*First Judicial District, Hartford, May Term, 1896. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

Under § 1064 of the General Statutes it is the duty of the trial court not to receive evidence subject to objection, unless both parties so agree. If, in the absence of such agreement, the evidence objected to is received but subsequently excluded, the complaining party will ordinarily be entitled to a new trial, unless it fairly appears from the record that he could not have been harmed by the action of the court.

In order that a former judgment may be admissible as conclusive evidence of a material fact therein adjudicated, when such fact is again put in issue in another action, it is essential that not only the individuals, but also the right or capacity in which they sue or defend, should be identical in the two cases.

A plaintiff who secures by assignment the right to sue for a previous breach of a non-negotiable contract, cannot avail himself in such suit, under the rules of *res judicata*, of a material fact established by a judgment in a former action brought by him in his own right, for the breach of a similar contract by the same defendant. The considerations of public policy, upon which the doctrine of *res judicata* rests, do not apply to an assignor who thus seeks to avail himself of a rule of estoppel, which he could not invoke if he had sued in his own name.

Section 981 of the General Statutes which permits an assignee to sue in his own name, does not alter the relations of assignor and assignee; they remain unchanged.

In the present action the validity of certain receipts purporting to have been given to the defendant in full payment and discharge by the plaintiffs' assignors, was a material issue. The trial court, against the

<hr>

* Transferred from the third judicial district.

objection of the defendant, admitted the record of a former injunction suit brought by the defendant against the plaintiffs, as conclusive evidence of the invalidity of such receipts. *Held* that inasmuch as it appeared from the record of that suit, that the validity of the receipts was not in fact tried and determined, the record was erroneously admitted as conclusive evidence upon that issue.

[Argued May 14th—decided June 5th, 1896.]

SUIT upon certain policies of life insurance, praying for a disclosure, an accounting and other equitable relief, and for damages, brought to the Superior Court in New Haven County and tried to the court, *George W. Wheeler, J.;* facts found and judgment rendered requiring a disclosure and accounting upon the part of the defendant, and appeal by it for alleged errors in the rulings of the court. *Error and new trial granted.*

The record of the pleadings etc., exclusive of the evidence, covers more than five hundred printed pages. The following statement contains those matters appearing in the record which are material to the disposition made of the appeal :—

In 1874 the defendant issued to the plaintiff Harriett A. Fuller, a ten year term life policy on the life of her husband, the plaintiff, Austin B. Fuller. The policy contained the following agreement: "At the request of the assured this policy is issued upon the reserve dividend plan ; and the said company agree that should the premiums be paid as herein stipulated for ten full years from the date hereof, and that should the life insured survive said period of ten full years, that said company will pay to the designee of this policy (Harriet A. Fuller) at the expiration of said period of ten years its equitable proportion of the reserve dividend fund in cash, the same to be receipted for to said company." Upon the expiration of ten years from the date of the policy, all the conditions of the policy having been complied with, Harriet A. Fuller became entitled to her "equitable proportion of the reserve dividend fund in cash." She refused the sum tendered by the company in payment of that debt, and

in March, 1884, with her husband, filed a bill in equity in the United States Circuit Court for the Southern District of New York, against the company, claiming an account and other relief. In February, 1888, the Circuit Court made an interlocutory decree directing the defendant (the Insurance Company) to account, referring the same to a master for that purpose, and ordering the principles on which the account should be taken. The bill of complaint alleged that the company authorized its agent to represent that the "reserve dividend plan" mentioned in the policy, was the plan explained in instructions issued to its agent and known as the "Key to Reserve Dividend Plan"; that the agent so represented to the assured, and that the assured, relying on said representations, entered into the contract of insurance. The interlocutory decree found that the parties to the policy contracted with reference to the reserve dividend plan so stated and explained. In May, 1889, the Circuit Court passed a final decree as follows: "An interlocutory decree having been made and filed herein, directing the defendant, The Metropolitan Life Insurance Company, to account, and referring the same to John A. Shields, Esq., a master of this court for that purpose, and the defendants having applied to the court for instructions to the master as to the principles upon which the account should be taken; and thereupon the defendants having in open court offered to pay the sum of $4,500 in full settlement of all claims under the policy held by the plaintiffs, and they having accepted the offer; it is ordered, adjudged and decreed that the plaintiffs recover of the defendants the sum of $4,500 and their costs." . . .

In September, 1889, the present defendant brought a complaint to the Superior Court for New Haven county, praying an injunction restraining Austin B. Fuller and Harriet A. Fuller from prosecuting against the company any claim growing out of assignments of policies obtained by the Fullers for that purpose, from persons whose claims under the policies had been adjusted with the company and who had surrendered their policies to the company and given receipts in full discharge and satisfaction thereof. The answers of the Fullers

to this complaint contained two defenses : first, a general denial; second, that the surrenders of the policies and the receipts were obtained by the fraud of the company. They also filed a number of counter-claims, each counter-claim being in the nature of an action on a policy of insurance issued to a third party and assigned to the Fullers, and seeking an account and judgment substantially on the same grounds set up by the Fullers in the case in the United States Court in respect to their own policy. The Superior Court ordered the issue made by the first defense of the defendant's answer, to be heard and determined before any other issue in the cause was tried. Upon a hearing on the first defense, the court found the facts and, at the request of the parties, reserved the questions of law arising on the finding for the advice of the Supreme Court of Errors (Reported in 61 Conn. 252). In pursuance of that advice, the temporary injunction which had been granted in the cause was dissolved; the court denied the claim of the defendants to a judgment in their favor on the first defense, and also their claim to the same right to prosecute their counter-claims as they would have had if the whole case had been on trial in the Superior Court, and dismissed the complaint; the defendants having filed a written withdrawal of their counter-claims, which written withdrawal was made a part of the judgment of dismissal.

The complaint in the present case contains forty-one counts. Each count sets up the issue by the defendant to a third party, of a policy of insurance similiar to the one in the case in the United States Circuit Court, containing a similar agreement as to the "reserve dividend plan" and the "reserve dividend fund." Each alleges that the "reserve dividend plan" mentioned in the policy, is the reserve dividend plan set forth in a certain book entitled "Key to Reserve Dividend Plan," annexed to the complaint; that the defendant delivered to its agent said book and instructed him to obtain insurance on that plan, and to use that book to explain the plan to applicants for insurance; that pursuant to such instruction the agent of the defendant represented and explained to the assured that the reserve dividend plan of the

policy was the plan stated in said book, and showed him said book and read him therefrom the paragraphs explaining the plan and quoted in the complaint, and declared to him that the book described the reserve dividend plan practiced by the defendant, and that the assured accepted the policy upon the faith of the book so exhibited to him, and of the said declarations; that at the expiration of the ten years the defendant informed the assured that his equitable proportion of the reserve dividend fund was $———, and the assured having no knowledge or means of knowledge as to what his true proportion should be, believed the amount so stated to be correct, and in reliance on said belief accepted said sum and thereupon surrendered his policy of insurance and gave to the defendant a receipt for said sum in full payment, settlement and discharge, of all claims and demands whatsoever that he had against the company for dividends, surrender value or otherwise, under or by virtue of the policy; that the defendant obtained said receipts by fraudulently concealing the truth from said assured in order to cheat and defraud him; that in 1889 the assured assigned to Harriet A. Fuller all his claims against the defendant, and that she is now the equitable and *bona fide* holder and owner thereof; that said assignment was as follows: "For one dollar and other considerations I, ——— do hereby sell, set over, transfer and assign unto Harriet A. Fuller, of New Haven, Conn., all the claims, demands, and causes of action which I have or may have against The Metropolitan Life Insurance Company of New York, N. Y. Witness my hand and seal this ——— day of 1889;" and that the consideration therefor was expressed in the instrument executed by A. B. Fuller and delivered to the assured as follows: "Whereas, ——— has this day assigned to Harriet A. Fuller, wife of Austin B. Fuller of New Haven, Conn., a claim against The Metropolitan Life Insurance Company of New York, with the expectation that said claim will be prosecuted against said company: This agreement witnesseth, that the said assignment is made upon the following understanding, viz: Said A. B. Fuller is to employ attorneys and counsel for the purpose of prosecut-

ing said claim in the name of said Fullers, and without any liability on the part of said ———— to pay the expenses, or any part thereof.   If no recovery is had the said ———— is not to make any claim against said Fullers, or either of them.   But if the suit results in a judgment and recovery for the plaintiff, then said A. B. Fuller will pay to ———— one-half of such sum as remains to him, after paying lawyers and other expenses.   If said Fullers find it advisable to give up the attempt to prosecute the claim, then the right is reserved to re-assign said claim to former holder, whereupon their liability under this agreement will then cease."

The prayers for relief in the complaint are, first, that the defendant may answer certain interrogatories; second, a cancellation of said receipts; third, an account; fourth, a judgment for the amount found due by account; fifth, $100,000 damages.

The material allegations of fact, *i. e.*, the alleged instructions given to agents, the declarations of agents, acceptance of the policies in reliance on said declarations, and fraud in obtaining receipts, were put in issue by the answer.   The Superior Court rendered an interlocutory judgment in which it found the main issues of fact for the plaintiffs, construed the meaning of the language used in the " Key to the Reserve Dividend Plan," ordered an accounting, appointed William L. Bennett, Esq., to take such account, and laid down the principles on which the account should be taken.

Upon the trial of the cause the plaintiffs offered in evidence the records, pleadings and depositions in the case tried, as above stated, in the United States Circuit Court; this evidence was received by the court subject to objection, and portions of the testimony appearing therein were read in evidence.   The defendant objected to any admission of this evidence, and excepted to the rulings of the court in admitting it.   Substantially at the close of the plaintiffs' case the defendant asked that the evidence so received be excluded, and that the question of the admissibility of the record be then finally disposed of; insisting that it was neither admissible nor conclusive.   The court denied this motion and di-

rected the defendant to go on with the evidence; to this
ruling of the court the defendant excepted.   No further rul-
ing was made until September 28th, 1895, some months after
the close of the trial, when the following was filed with the
clerk : ·" Rulings upon evidence received subject to objection.
The judgments rendered in the case of Fuller v. The Metro-
politan Life Insurance Company, in the United States Circuit
Court, together with all evidence offered in said cause, are
excluded."

In the finding it appears that the defendant claimed that
the receipts given by the several policy-holders to the defend-
ant, were a bar to the action, and that upon this claim the
court ruled that one of the issues involved and passed upon
in the injunction case above described, was the question of.
the bar of these receipts to the maintenance of any action
upon the assignments sued upon, and that such issue was
decided adversely to the present defendant; that the parties
and subject-matter were the same in the injunction case as
in this case, and that such decision precluded further con-
tention on this point in this case.   After making this ruling
the court recited the facts as found by it, supporting the
plaintiffs' claim that the receipts were obtained by fraud,
and held that these facts were sufficient to show that the
receipts were obtained by the fraud of the defendant.   It
clearly appears upon the whole record, that the defendant
objected to the admission of the judgment in the injunction
case as evidence of a former adjudication of this question be-
tween the parties, and excepted to the ruling of the court
admitting the judgment; but the fact of the objection and
exception is not stated in the finding, unless by inference.

The defendant appealed from the interlocutory judgment
ordering an account under the provisions of "An Act con-
cerning Civil Actions," approved March 19th, 1895 (Public
Acts of 1895, p. 446).   The reasons of appeal assign a very
large number of errors in the rulings and decisions of the
court in the course of the trial, including the matters above
stated, and also errors in the legal conclusions of the court
from the facts appearing in the finding.

*Henry C. Robinson* and *Henry Stoddard*, with whom was *Goodwin Stoddard*, for the appellant (defendant).

The judgment in the injunction case was inadmissible as a conclusive adjudication upon the validity and effect of the releases and receipts. The subject-matter was not the same; the issues were not the same; the parties were not the same. *Met. Life Ins. Co.* v. *Fuller*, 61 Conn. 252, 256, 262; *New England Mfg. Co.* v. *Starin*, 60 id. 374. The court also erred in admitting evidence subject to objection, without the consent of both parties. *New England Mfg. Co.* v. *Starin, supra; Richmond* v. *Stahle*, 48 Conn. 22; *Buckingham's Appeal*, 60 id. 143; *Harris* v. *Woodstock*, 27 id. 571; *Jacques* v. *Bridgeport H. R. Co.*, 41 id. 66; *Norwalk* v. *Blanchard*, 56 id. 461; *Peck* v. *Pierce*, 63 id. 319, 320. The record in the New York suit was not conclusive against this defendant, touching the construction of the policies in question and the use of the words "reserve dividend plan." The suit in the case at bar is upon contracts made with other persons than the plaintiffs, and even if the same questions of fact and law were involved, the trial court decided the record was not admissible. *Burdick* v. *Norwich*, 49 Conn. 225. This objectionable evidence was not excluded by the judge until the case was decided.

*John W. Alling* and *Talcott H. Russell*, with whom were *E. P. Arvine*, and *L. A. Fuller*, for the appellees (plaintiffs).

The New York record was clearly admissible as *res adjudicata* in regard to the meaning of the policies in suit. *Cromwell* v. *County of Sac*, 94 U. S. 351; Freemen on Judgments, § 449; *Dexter* v. *Whitbeck*, 46 Conn. 225; *Supples* v. *Cannon*, 44 id. 424; *Munson* v. *Munson*, 30 id. 433; *Marsh* v. *Pier*, 26 Amer. Dec. 131, 142; *Curtis* v. *Bradley*, 65 Conn. 101; *Hill* v. *Morse*, 61 Me. 541; *Atkinson* v. *White*, 60 id. 399; *Flint* v. *Bodge*, 10 Allen, 129; 1 Greenleaf on Evidence, § 535; *Castle* v. *Noyes*, 14 N. Y. 329; *Merriam* v. *Whittemore*, 5 Gray, 316; *Southern Mo. Ry. Ext. Co.* v. *St. Paul, etc. R. Co.*, 55 Fed. Rep. 690; *Collins* v. *Hydorn*, 62 Hun, 288, 135 N. Y. 320; *Montrose* v. *Wanamaker*, 32 N. Y. St. Rep. 1059,

134 N. Y. 590, 594. The injunction record was clearly admissible and on similar grounds.

HAMERSLEY, J. In affirmance of a salutary principle in the conduct of trials, § 1064 of the General Statutes provides that whenever evidence offered upon the trial of any civil action is objected to as inadmissible, it shall be the duty of the court, if either party shall request a decision, to then pass upon such objection and admit or reject the testimony. Upon the trial of this case the plaintiffs offered in evidence the records, pleadings and depositions in a former action in the United States Circuit Court, as evidence and conclusive evidence of facts material in the present case; the defendant objected to this evidence as inadmissible; the trial court received and heard the evidence subject to objection; substantially at the close of the plaintiffs' case the defendant asked that the evidence so received be excluded, and insisted that its objection to the evidence as inadmissible be then finally disposed of; the court refused to then pass upon such objection, and when the case was decided, some months after the trial, filed its ruling excluding the evidence. In this the court erred, and the error is one which entitles the defendant to a new trial, if it appear that he was injured thereby.

When inadmissible evidence is received subject to objection and afterwards excluded, a party may be injured, either by the influence such evidence may have had, even unconsciously, on the mind of the judge, or by the confusion and embarrassment which the uncertainty as to what has and has not been proved, may subject counsel in the trial of their cause. *Jacques* v. *Bridgeport H. R. Co.*, 41 Conn. 61, 66. And "in such cases the question is, does it fairly and with reasonable certainty appear upon the record that the party complaining could not have been harmed by the action of the court? Unless it does so appear a new trial will ordinarily be granted." *Peck* v. *Pierce*, 63 Conn. 310, 319. It is impossible to examine the rulings of the trial court, from the first admission of the evidence in question to its final exclusion, without deeming it probable that the embarrassment

caused by the errors complained of, was a material injury to the defendant in the trial of its case. A new trial therefore should be granted.

Counsel for the plaintiffs, in their ingenious and able brief, maintain that the court erred in the final exclusion of the evidence; that the judgment excluded was admissible as *res judicata*, and conclusive as to the main question at issue, and that therefore the defendant was not injured by the error complained of. We think the court did not err in excluding the judgment; that the *res judicata* established between the parties to the action tried in the Circuit Court, does not apply to the parties in this action.

The term " *res judicata* " is used with different meanings in connection with different conditions, and not always with discrimination; perhaps an exact discrimination is not always practicable in the present state of the law on this subject. The two most important applications of the principle are, where it is invoked in respect to a cause of action once finally determined by a judgment; and where it is invoked in respect to the conclusiveness of a fact, contested between the parties to an action and determined by the judgment in that action, upon the same parties when agitating their controversies in another suit upon a different cause of action. There is an evident distinction in these cases, not only as to the effect of a judgment, but as to the grounds on which the principle producing the effect is based. This distinction is drawn with great clearness in the opinion of JUSTICE FIELD in *Cromwell* v. *County of Sac*, 94 U. S. 351, 357. In the former case the judgment is produced as conclusive evidence that no cause of action exists; either the cause of action has been satisfied and merged in the judgment, or its non-existence has been judicially determined and forever settled by the judgment; and the controlling principle depends primarily on the legal effect of a judgment on the cause of action determined,—the judgment is not treated merely as an estoppel to the proof of any fact involved in the trial of the cause of action alleged, but is rather held to be conclusive evidence that the cause of action alleged does not now exist, or never

had an existence. In the latter case the judgment is produced as evidence of some material fact in the cause of action on trial, the truth of which fact both parties are estopped from denying. In such case the controlling principle depends upon the effect of a judgment in giving indefinite life and irrebuttable probative force to any fact once judicially found to be true. It is with this latter principle alone that we are now concerned, and it must be borne in mind that the principle does not relate to the finality of a judgment in disposing of a cause of action, but to the vitality of a judgment in preserving for evidential purposes a fact once found. As stated by BALDWIN, J., in 1810, the rule is "that a fact once decided shall not be again disputed between the same parties." *Church* v. *Leavenworth*, 4 Day, 274, 281. This principle is now settled beyond controversy. *Sargent & Co.* v. *New Haven Steamboat Co.*, 65 Conn. 116, 126. But its limits in all directions are not so well settled. The very nature of the principle calls for narrow limits in its application. Within certain limits public policy that regards unnecessary litigation as an evil, that looks upon the re-agitation by parties of controversies once submitted by them to a final adjudication, as contrary to equity and good conscience, supports the application of the principle as wise and equitable; but the same public policy might regard its application beyond those limits, as dangerous and unjust. Among the recognized limits are the following: The fact must be established by a final judgment; it must have been in issue under the pleadings and must also have been actually litigated and determined; it must be identical with the fact sought to be established in the second action; the identical persons between whom the fact was adjudicated in the same right or capacity, or their privies claiming under them, must be the parties to the second action.

In the present case the defendant claims that the fact which the judgment was offered to prove, has not been established by a final judgment, and that the fact claimed to be so established is not identical with the fact now sought to be proved. We do not discuss these claims, because we

are satisfied that the identical persons between whom the facts
at issue in the former action were adjudicated in the same
right and capacity, are not the parties in the present action.
The precise question is this : When *A* and *B* have, in their
individual right and capacity, litigated a fact in issue in the
trial of a cause of action arising from the breach by *B* of a
non-negotiable contract between them, is a fact found to be
true by the adjudication of that action, *res judicata* in a later
trial of a different cause of action arising from the breach by
*B* of a different contract between him and *C*, brought by *A*
in his capacity as an assignee of *C*, subsequent to such breach?
Such use of an adjudicated fact does not come within the
limits to the application of this principle as generally stated.
No authority has been cited holding a fact to be *res judicata*
under such circumstances. The case of *Flint* v. *Bodge*, 10
Allen, 128, might be used as indicating some support to the
plaintiffs' claim, but the opinion of the court does not refer
to the present question, and it evidently was not considered.
The opinion of the Supreme Court in *Collins* v. *Hydorn*, 62
Hun, 286, 288, was reversed in the Court of Appeals, 135
N. Y. 320, and the opinion of the appellate court, which is
the last statement of the law in New York upon that subject,
seems expressly to state that for the purpose of the applica-
tion of this principle of *res judicata*, the assignee of a chose
in action in prosecuting the right assigned, is not acting in
the same capacity as when he prosecuted a different chose in
action to which he was an original party. *Curtis* v. *Bradley*,
65 Conn. 99, 115, which was also cited, has no application.
In that case Curtis, Bradley, and one Plumb, were parties
to a verbal agreement under which Plumb was to build a
house on land Bradley had purchased from Curtis ; as the
work progressed Curtis was to pay Plumb for his services
and for all the labor and materials that went into the con-
struction of the house, and when the house was completed
and occupied, Bradley was to pay the money expended for
construction. Bradley accepted and occupied the house and
refused to pay. Curtis sought to enforce the contract through
a mechanic's lien filed in the name of Plumb ; failing in this,

because the court found that Bradley's promise of payment was not to Plumb, he brought suit under the same contract against Bradley to recover the same money; in this suit the judgment in the former suit was offered in evidence and admitted, for the purpose of showing that Bradley was estopped from claiming that his contract was made with Plumb; its admission was objected to on the ground the record was that of a suit between different parties. The admission of the judgment was sustained by this court, because it appeared from the appeal record that Curtis in his individual right was "the actual plaintiff in the former action," under the rule recognized in *Buckingham's Appeal from Probate*, 60 Conn. 143. The opinion (p. 115) referred to the fact that after the commencement of the action Curtis, having taken an assignment from Plumb, had been substituted for Plumb as plaintiff, in connection with the unfounded claim that it was necessary that Curtis should have been a party to the record in the former action, as well as the party in interest who actually brought and conducted the suit. The question now before us was not involved nor considered.

The fact that the recognized general statement of the limits of the application of this rule of *res judicata* seems to exclude cases where the first suit is upon a cause of action arising between parties in their individual capacity, and the second suit is brought by one of the parties in his capacity as assignee of a cause of action arising between the other party and a third party, and that it has never in this State been extended to such cases—and so far as we are advised has never been extended to such cases by courts of last resort in other jurisdictions—is significant that such extension is not supported by authority. We think it cannot be supported on principle.

As stated above, the rule which gives an indefinite life, a continued and conclusive probative force to an adjudicated fact in future litigation of other and different causes of action, is based on considerations of public policy, and must be confined within the limits where those considerations are

operative.   When confined to the identical persons who were
parties to the first action, in the same capacity in which they
were parties, the considerations of public policy are clear,
and the rule should be applied in the broad spirit that gov-
erns the application of a rule so founded.   But when these
limitations are wholly removed, the rule is no longer sup-
ported by such considerations ; on the contrary it is clearly
opposed to them.   It is certainly not in the interest of peace
and honesty that every adjudicated fact should thereafter re-
main an irrebuttable witness to be employed in all future liti-
gation by whoever may need its services.   Such unlimited
application of the rule would promote litigation and encour-
age dishonesty.   So in a less degree, the considerations of
public policy which support the rule within its proper limits,
do not apply where the evidential capacity of the adjudicated
fact is made the subject of trade, so that a person possessing
a cause of action in the prosecution of which the fact cannot
be used as a witness, may secure the benefit of its services by
a trade with some other person ; and for this reason the con-
clusiveness of a fact adjudicated between two persons con-
testing in their own right, ought not to be extended to future
actions in which one of the parties prosecutes a cause of action
belonging to a third party, in which he is interested only by
virtue of an assignment made subsequent to the judgment in
the first action.

The possible and probable consequence of such an exten-
sion of the rule is illustrated by the present case.   *A* recovers
judgment against *B* in a cause of action which has arisen
between them ; a fact therein adjudicated may be conclusive
on the merits of another cause of action which has arisen
between *B* and *C*.   To induce *C* to put his cause of action
in litigation, *A* offers him the benefit of the adjudicated fact
which is conclusive on *B* as against *A*, but not as against *C*,
and promises *C* one half the net proceeds of the litigation to
be conducted solely at the expense of *A*, if *C* will assign his
claim to him upon such consideration.   Surely such a trans-
action violates public policy in various ways.   It promotes
litigation, it erects a technical bar against proving the truth,

it tends to bad faith. This rule of *res judicata* exists, because within its proper limits it tends to put an end to the litigation of obstinate litigants, because as between them, in equity and good conscience, the fact adjudicated ought to be conclusive; an extension of these limits, so that the probable consequences will be the opposite, cannot be justified on the considerations of public policy that support the rule.

In stating this conclusion we do not intend to pass upon the limits of this rule of *res judicata* in other respects; the considerations of public policy on which the rule rests, may justify some apparent extension of those limits, but they do not justify an extension which makes a fact adjudicated in an action between two persons litigating a cause of action which has arisen between them in their individual capacity, *res judicata* in subsequent actions brought by one as assignee of a chose in action between the other and a third person, which the plaintiff has purchased of such third person after his right thereon has become fixed, and since the judgment in the first action was rendered. The statute authorizing such assignee to bring a suit in his own name alleging the assignment, his equitable ownership in good faith, and the manner of acquiring such ownership, does not alter the relations of assignor and assignee; they remain unchanged. *Beach* v. *Fairbanks*, 52 Conn. 167; *Saugatuck Br. Co.* v. *Westport*, 39 id. 337, 349.

The principle which seeks to prevent multiplicity of actions is not—as was suggested by counsel for plaintiffs—involved in this discussion, nor is there any ground for claiming the admissibility of this judgment as a sort of judgment *in rem* binding on all the world, or as evidence of reputation, or of the fixed meaning of a term of art. The cases cited by the plaintiff do not apply to the present conditions. The judgment in the United States Circuit Court being inadmissible as *res judicata*, the exemplified copy of the judgment appearing in the record of the injunction case, could not be used for such purpose.

The court below also erred in admitting the record in the injunction case as conclusive evidence of the invalidity of the

receipts in full.   The finding does not clearly show that this evidence was objected to; but as the same question is distinctly raised by the ruling of the court that the judgment in the injunction case was conclusive on the question of the invalidity of the receipts, and as the question is likely to arise in the same form if a new trial is had, we think it should be decided now.   In the action for injunction, the present defendant sought to enjoin A. B. Fuller and wife from bringing actions on the policies of insurance set up in the present suit; on the theory that upon the facts alleged the assignments to them of the claims under said policies were against public policy and void.   The answer contained a first defense which was a general denial, and a second defense alleging that the receipts referred to in the complaint were obtained by fraud; counter-claims were also filed, each counter-claim being in effect an action on a separate policy which had been assigned to the Fullers.   By order of court the case was tried on the first defense alone.   The court held that upon the facts alleged the plaintiff had no right to the remedy sought, refused to render judgment for the defendants on the first defense, and to admit them to prosecute their counter-claims in that action, and dismissed the complaint for want of equity.

It is clear that nothing could have been adjudicated in this case except the facts in issue under the first defense. Counsel for the present plaintiffs claim that the complaint should be construed as alleging the validity of the receipts as a material fact; that the first defense contains a denial of that fact, and therefore the judgment is conclusive evidence of the invalidity of the receipts.   Aside from other considerations, it is an insuperable objection to this result, that the record itself shows that the claim that the complaint should be so construed, was ruled upon by the trial court and denied, and that the validity of the receipts was not tried and was not determined, because it was not a fact in issue.

There is no other alleged error in the rulings of the court during the trial, clearly presented by the finding and likely to occur in the same form upon a re-trial, of sufficient importance to call for consideration.

Fuller et Ux. *v.* Metropolitan Life Ins. Co.

The main claims of error in the conclusions of the court upon the facts found, relate to the construction given to the language of the book entitled "Key to the Reserve Dividend Plan," and to the conclusion of fraud in obtaining the receipts. The first question is embarrassed by the finding that the contracts of insurance were in fact made upon an agreement in each case, that certain selected passages in said book contained the accepted definition of the "reserve dividend plan" specified in the policy; and the other question depends almost wholly upon the language of the finding in the statement of facts. These questions have been argued elaborately and with great ability. We regret that it is not practicable to express some opinion that may be useful upon a re-trial. But inasmuch as a new trial must be granted, and we cannot assume that upon a re-trial the facts proved will be the same, or that the finding of facts which may come again before us will present the questions in the same manner, it is apparent that an expression of opinion on the questions as presented by this finding, may not be applicable to the facts established on the new trial, and may operate unfairly on the parties in preparing and trying their cause, and raising the precise issues of law that should determine their rights. We therefore refrain from indicating any opinion on these questions.

A new trial is granted.

In this opinion the other judges concurred.