No. 1018.—CORA A. SLOCOMB *v.* MANUEL J. DE LIZARDI.

In order to justify a court of justice in rejecting a demand as contrary to the authority of the thing adjudged, it is necessary that the thing demanded is the same as in the first suit, is founded on the same cause of action, and the contest is between the same parties, acting in the same qualities.  C. C. 2264, 2265 ; Marcade, vol. 5, p. 156.

To ascertain what is demanded in a particular suit resort must be had to the prayer of the petition. 16 La. 44 ; 1 Rob. 109.

The plea of *res judicata* to a second suit will not be maintained, unless it is shown to be between the same parties and acting in the same qualities with that of the first, founded on the same cause of action and on the same demand ; if either of these requisites is wanting the plea will be overruled.

Notice to one member of a partnership which indorses a bill or note is notice to all, and if one of the firm dies before maturity, notice to the survivor will bind the estate of the deceased partner.  Parsons on Notes and Bills, vol. 1, p. 502.  Where a commercial partnership has been dissolved by the death of one of the partners, notice to the executor of the deceased partner will not bind the partnership on an indorsement of the firm name on a note made before the dissolution ; in such a case notice should have been given to the surviving partner, especially if he be the liquidator or representative of the firm.

The certificate of the notary that notice was given by a letter directed to the indorser's bar-keeper, he not being in, is defective in not stating that the service was made at the endorser's residence or place of business.  1 An. 95 ; 2 An. 759.

The partner *in commendam*, by failing to have a final settlement of its affairs, does not *ipso facto* become responsible for the liabilities created by the active partner, after the expiration of the term of the partnership.

A partner *in commendam*, having allowed his money to remain in the partnership after the expiration of the term, as shown by the recorded act, under the belief that he was still a partner *in commendam* and only liable for the amount invested, cannot be held liable as a general partner, unless he has done something, or permitted something to be done, which the law declares will render him responsible as a general partner.

APPEAL from the Fourth District Court of New Orleans.    *Theard, J. Bradford, Lea & Finney,* for plaintiff and appellant.    *R. Hunt, P. H. Morgan* and *G. Le Gardeur,* for defendant and appellee.

LUDELING, C. J.    A judgment was rendered in this cause at the last term of this Court, by our predecessors, maintaining the defendant's plea of *res judicata.*

Having granted a new hearing, our first duty is to examine whether or not this exception is well founded.

The plaintiff seeks to recover from the defendant eight thousand dollars, with eight per cent. per annum interest on $4000 thereof from the eleventh of April, and on $4000 thereof from the eighteenth of April, 1861, being the amount of two promissory notes drawn and endorsed by Hugh M. Keary and endorsed subsequently by Juan Y. de Egana, upon the ground that these endorsements were made by the commercial firm of J. Y. de Egana, and that the defendant was, at the time they were made, a general partner in said firm.

The defendant denied all the allegations in plaintiff's petition, and especially that there ever existed between him and Egana any partnership, as alleged by the plaintiff.  Subsequently he filed the exception of *res judicata,* and to support it, he pleaded the judgment of the Second District Court of New Orleans rendered on the eleventh January, 1864, in the matter of the succession of Juan Y. de Egana.

It is true, as stated by the counsel for defendant, that the authority of the thing adjudged is not a mere technicality of the law, but it is a

principle of jurisprudence which is founded in the interest of society. It rests upon the broad and necessary doctrine that the disputes of men must, at some time, have an end, and it is, therefore, favored by the law.

But in order to justify courts of justice to reject a demand as contrary to the authority of a thing adjudged, *a legal verity*, it is necessary that *the thing demanded* should be the same as in the first suit, that *the demand* should be founded *on the same cause of action*, and that the contest should be between the *same parties, acting in the same qualities*. Thus, identity of the things demanded, identity of the causes of action, and identity of the parties and of their qualities are the conditions upon which alone the legal presumption is established in favor of the thing adjudged. C. C. arts. 2264, 2265; Marcadé, vol. 5, p. 156.

What, then, was *the thing demanded* in the suit in which the judgment of the eleventh of January, 1864, was rendered? As between Caballero, the executor, and Lizardi, the liquidator, it was to make the latter return to the former the property of the succession of Egana, in the event that the court should decide that it had been improperly delivered to him. On the eleventh of April, 1863, in consequence of proceedings by creditors of the succession of Egana against him, the executor filed a petition calling on the liquidator to file an account of his administration. The liquidator was ordered to file his account, which he did on the 30th of May, 1863. The executor opposed this account, prayed that it be rejected, and that, in the event that the court should decide that the executor had unlawfully turned over to the liquidator the money and property of the succession, that the liquidator should be ordered to return them to him. It is the prayer which indicates the thing demanded. 16 La. 44; 1 R. 109.

The prayers of the oppositions filed by the creditors do not show that Lizardi was sought to be made liable *as a general partner*.

But we deem it unnecessary to examine the oppositions of the creditors further, for *they* certainly did not represent any body but themselves. And if we admit that the executor did represent, in those proceedings, all the creditors, we have seen that *the thing demanded* in that suit was not to make Lizardi responsible for the debts of the firm of J. Y. de Egana, as a general partner.

The *demand must be founded on the same cause of action*.

What is the cause of an action? It is *the immediate foundation* of the right which one claims to exercise. It is *the immediate basis* of the demand—and hence we must guard against confounding *the cause* of action, either with the various circumstances which constitute the mediate bases, or simple means which produce this last cause, or with the *right itself*, which is *the object* of the demand.

The cause of action in this suit is the alleged endorsement of two promissory notes by Lizardi, as a member of the commercial firm of J. Y. de Egana.

The cause of action between Caballero and Lizardi was the wrongful possession and unlawful administration of the property of the succession of Egana by Lizardi.

It is true that some of the creditors charged, in their oppositions, that Lizardi was a general partner, to show fraud and complicity between him and the executor; but this was not, nay, it is difficult to conceive how it could have been, the *immediate cause* of the action between the executor, creditors and liquidator.

Marcadé says: " Il ne faut pas confondre la cause avec les éléments qui viennent produire ou justifier cette cause. Sans doute, il y aura là des principes du droit demandé, et dès lors des bases de l'action par laquelle on réclame ce droit; mais ce sont des bases éloignées et médiates, des causes de la cause, que la loi n'aurait pas pus prendre ici en considération, sans éterniser les procés et depouiller de toute efficacité les décissions judiciares. Il n'y a pas a se préoccuper de ces bases éloignés, et la cause ne se trouve que dans la base derniére, dans le principe immédiatement générateur que les Romains appelaient fort exactement *causam proximam* actionis." * * Vol. 5, p. 165. " La règle est donc de ne considérer ici que la base immédiate. Mais biens entendre, dès là que cette base immédiate n'est pas la même dans les deux demandes, il n'y a plus chose jugée, et la demande nouvelle est recevable." Mercadé, vol. 5, p. 166.

The demand *must be between the same parties*, and formed *by them against each other in the same quality.*

Lizardi was sued in the first suit in his fiduciary capacity as liquidator; in this cause, he is sued personally as a general partner of a commercial firm.

In the first case he was proceeded against by Caballero, executor of Egana; now he is proceeded against by a creditor of the firm.

But it is said that Caballero, executor, represented the creditors, and that the homologation of his account and tableau bars all further inquiries as to the matters included in the account. This is true, with some limitations. The effect of such a decree protects the executor or administrator in making the payments ordered or approved, and from liability for his gestion so far as that is approved ; and it settles the claims of creditors against the succession as to the funds distributed, unless there be other creditors who were not placed upon the tableau. 4 An. 450; C. C. art. 1176.

Again, it is contended that the plea of *res judicata* must be held to be good, because the plaintiff acquiesced in the judgment by receiving a part of the fruits thereof. There is no doubt that acquiescence in a judgment however manifested, constitutes what is decided by *that* judgment the thing adjudged, that is, it becomes thereby a final judgment, from which there can be no appeal. C. C. art. 3522,

But that is all.  If a judgment which had become final by the lapse of time could not be pleaded as a bar to another action on account of the want of one or more of the conditions, which we have seen are necessary to  give it the authority of the thing adjudged, it could not be set up as an estoppel if the judgment had become final by acquiescence.

It is immaterial how a judgment becomes *res judicata; what is decided*, by such a judgment, must be held to be *legally true between the parties to the suit.*  And whether that judgment can be a bar to another action between the same parties, will depend on whether the thing demanded in the new suit be the same, and founded on the same cause of action, as in the suit decided.  It is not necessary, therefore, to determine whether or not Mrs. Slocomb acquiesced in the judgment pleaded in bar of this action.

The *"authority of the thing adjudged takes place only with respect to what was the object* of the judgment."  C. C. art. 2265.

The *object of the judgment* in the matter of the succession of Egana was to compel Lizardi to restore to the possession of the executor the property which Lizardi had received from him.  "Il est bien entendu que c'est uniquement dans le dispositif d'un jugement, et non dans ses motifs, que se trouve la chose jugée.  *  *  *  Bien plus, le dispositif lui-même ne presente la chose jugée que pour les points qui sont vraiment décidés, et non pour ceux que ne s'y trouvent que comme de simples enonciations; *c'est en examinant les questions sur les quelles les parties étaient en désaccord et que leur debat présentait à* décider, le *quid judicandum,* que l'on arrivera facilement à comprendre ce què a été jugé, le *quid judicatum.*"  5 Marcadé, p. 155; Serey's Code Annoté, notes 58, 59 and 60, art. 1351 of the Code Napoleon.

In Jeannin *v.* De Blanc, 11 An. p. 466, this court said, "as this right is not put in controversy *by the pleadings,* so it is not barred by the judgment."  15 La. 485; 17 An. 104.

The exception should have been overruled.

## ON THE MERITS.

Assuming that a commercial partnership existed, as alleged by the plaintiff, we think that the defendant cannot be held liable under the indorsements, for want of due notice of the dishonor of the notes.

The partnership, if it existed, would have been dissolved by the death of Egana in 1860.  C. C. 2847, 2851; Story on Part. sec. 317, 319.

Manuel J. de Lizardi was appointed liquidator of the commercial firm, and he was put in possession of the property of the firm, which he proceeded to administer.  Under these circumstances to whom was it necessary to give notice of the dishonor of the notes?  We think

the notice should have been given to the liquidator, who was in this case the surviving partner. Story on Bills § 305.

Mr. Justice Story says, "Notice to one of several partners is notice to all the partners, and the notice may be given to any partner, either at his usual place of business or at his dwelling house, or at the usual place of business of the firm." "In cases of partnership, *notice should be given to the firm;* but notice to *either of the partners will be notice to the firm.* \* \* \* If, in case of a note of a firm, one of the firm die, *notice should be given to the surviving partner.* Whether notice to the personal representative of the deceased would be valid does not appear to be settled by the authorities." Story on Promissory Notes § 310. In his work on Bills he says, "if one partner is dead, notice should be given to the survivor." § 389; 2 Hill, p. 635.

Mr. Parsons says, "Notice to one member of a partnership which indorses a note or bill is notice to all, *because each partner represents the interests of all the other partners* AND *of the partnership,* and the same has been held where notice has been given after dissolution and publication. So if one of the firm dies before maturity, notice to the surviving partner is sufficient to hold the estate and legal representatives of the deceased." Parsons' Notes and Bills, vol. 1, p. 502.

The reason assigned by Mr. Parsons for holding that notice to one of the partners is notice to all is because he represents the *other partners* AND *the firm.*

Who represented the partners and the firm after the appointment of Lizardi as liquidator? It would seem that the reason, upon which is based the rule which requires notice of non-payment to be given to the indorser, to wit: to enable him to take the necessary measures to obtain payment from the parties respectively liable, would require the notice to be given to the surviving partner, especially if he be the liquidator or representative of the firm. How could he know that the notes, of which the firm was indorser, had not been paid when due, if the holder gave him no notice of it? How was he to know, without notice, that the holder looked to the indorser for payment? The executor had no power to administer the partnership affairs nor did he represent the partnership—how then could a notice served upon him be regarded as a notice to the firm or to the surviving partner? 4 R. p. 276; 7 R. p. 13; 9 R. 124.

The only evidence in regard to the notices of protests is to be found in the certificates of the notary who protested the notes. The first certificate states that the notary served the notice in the following manner: "by directing the one for Hugh M. Keary, drawer and indorser, to him at Cheneyville, Louisiana, which letter I deposited prepaid in the post office in this city, on the same day of said protest, and by delivering the one for Juan Y. de Egana, in duplicates, one to J. M. Caballero, the testamentary executor of said Egana—the whole by my deputy, Lawson L. Davis—on the day below written, and by

delivering the one for Cora A. Slocomb to her personally, by Lawson L. Davis, my deputy, on the day below written." The other certificate states that he notified the parties by directing the one for Hugh M. Keary in the manner stated above, and " by delivering the notices for Juan Y. de Egana, as follows, to wit: one to Mr. Dubreuil, *the partner of the agent* of the liquidator of said firm of Juan Y. de Egana, and another to the book keeper of Mr. Caballero, executor of said Egana, at his office, he not being in on the day below written."

The first certificate shows that an attempt was made to notify the surviving partner or liquidator. The second certificate shows that an attempt was made to serve a notice on the liquidator, but the service was improperly made. In 9 Rob. p. 75 this court held that a certificate that a notice was served " *by leaving it with the cashier of a bank,* the indorser's elected domicile," is insufficient—*non constat* that the notice was not given to him at some other place, or that it was addressed to him there. So a certificate that " notice was given by a letter delivered to the indorser's bar keeper, he not being in " was held·to be defective in not stating that the service was made at the indorser's residence, or place of business. 1 An. 95 ; 2 An. 759.

The certificate does not state *where* the notice was served on Mr. Dubreuil, the partner of the agent of the liquidator. " If notice be not given, it is a presumption of law that the indorsers are prejudiced by the omission." Story on Bills § 284. And they are discharged from all liability.

But as it is possible that the notary did give the notice to the liquidator, and that this fact might be established on another trial, it might be our duty to render a judgment of non-suit only. This, therefore, obliges us to examine another question raised by the pleadings.

The plaintiff alleges that, at the time when the notes sued on were indorsed by Juan Y. de Egana, there existed a· general commercial partnership between Egana and Lazardi, carried on under the ·firm name of Juan Y. de Egana, and that Lizardi is responsible, *in solido,* with the succession of Egana for them.

In 1848 a commercial partnership was established in the city of New Orleans, in which Manuel J. de Lizardi was a partner *in commendam.* The business was carried on in the name of Juan Y. de Egana, and the partnership was to terminate in September, 1853. The act of partnership was duly recorded. The affairs of this partnership had not been settled at the period when Egana died. In 1860, Lazardi gave a power of attorney to his nephew to liquidate the affairs of the firm in case of the death of Egana, and after the decease of Egana, Lizardi, through his agent, filed a petition claiming to be appointed liquidator of the firm, as the surviving partner *in commendam.*

The counsel for the plaintiff infers from this that there existed a commercial partnership—that, as it is proved that no written act of partnership existed or was recorded, other than the one which expired

in 1853, therefore Lizardi was a general partner and he is bound, *in solido*, under the indorsement.

We are not prepared to adopt these inferences. It is not correct to say that because Lizardi thought and said, in 1860, tha the was *a partner in commendam*, when in truth he may not have been, therefore he was a general partner. His admission is that he was *a partner in commendam*. It would be illogical and unjust to construe this admission so as to make him a general partner, if he were not what he supposed he was. The admission cannot be divided. It either establishes the fact that he was *a partner in commendam*, or nothing. His opinion on the subject could not affect the facts, or the law governing the case.

The question is then presented for decision: Does the partner *in commendam* become responsible for the liabilities created by the active partner after the expiration of the term of the partnership *in commendam*, by failing to have a final settlement of its affairs, *ipso facto*?

We say this is the question presented, for there is no proof, nor is it alleged, that, prior to the death of Egana, Lizardi interfered with the business of the concern, or permitted his name to be used in it, or did any other thing, which under the provisions of the Civil Code would make him responsible as a general partner. We do not deem it necessary to decide whether a partnership *in commendam*, once duly recorded, may be extended or prorogued after the limitation thereof fixed in the recorded act, without complying with the forms set forth in article 2849 of the Civil Code. Whatever might be the consequences of such a state of facts, as between the partners, we cannot sanction the doctrine that one who has supposed that the partnership *in commendam* continued, in which he had placed his money, with the sanction of the law that he should not be responsible beyond that sum, should be held to be a general partner, and liable as such, without having done anything which could have induced creditors to believe that he was a general partner, or done or permitted any of the acts which the Code declares will render him responsible as a general partner. The Code says: "*In no case, except as in hereafter expressly provided, shall the partner who has no other interest in the concern than that of a partner in commendam be liable to pay any sum beyond that which he has agreed to furnish by his contract.*" C. C. art. 2813.

Here, then, is a textual provision of the Code supported by the well recognized principle that courts of justice cannot impose a penalty, which is not imposed by the law itself, which prohibits us from changing a partner *in commendam* into a general partner, except in the cases expressly stated. These cases are mentioned in articles 2816 and 2820, and they are the following: When the *original contract* has not been made in writing and recorded, or when the partner *in commendam*

46

takes any part in the business of the partnership, or permits his name to be used in the firm, or knowingly allows any single person to whom he has made the advance, to add any words or name or firm that may imply that he has other partners besides the partner *in commendam*, when in fact he has none.

These views are supported by commentaters on the Code Napoleon and by the French tribunals. Dalloz says (v. 40, v. Société, p. 682, No. 1420): "Les tribunaux n'ont pas admis cette prétention. Ainsi il y a été jugé que, lorsque deux personnes qui avaient contracté, pour un temps limité (trois ans, par example) une société en commenditc, ont, à l'expiration de ce temps, continué pendant une année les affairs communes sur les bases précédemment établies, mais sans remplir les formalités legales de publication, cette continuation n'a pas changé, même a l' égarde des tien, la qualité des associés, et n'a pas établi de solidarite entre eux." (Paris, 17 Avril, 1839). Delangle, vol. 2 pp. 225, 226.

This position seems to be in consonance with law and equity. In conformity with the law, because it is no where declared by the law that a failure to record the prorogation of the partnership shall change the partner *in commendam* to a general partner; and in conformity with equity, because having always confined himself within the limits prescribed by law to a partner *in commendam*, third parties could have no pretext to claim that he was ever bound otherwise than in the manner shown by the recorded act of partnership *in commendam*.

We think the defendant is not liable under the indorsements on the notes made by Juan Y. de Egana.

It is therefore ordered, adjudged and decreed that the judgment of this court rendered on the twenty-third day of June, 1868, be annulled, that the judgment of the District Court be affirmed, and the appellant pay the costs of the appeal.

Mr. Justice Howell took no part in this decision.

NOTE.—This case was pending on appeal before the Supreme Court under the Constitution of 1864. On the twenty-third of June, 1868, a decision was had through Mr. Justice Ilsly, the organ of the court, sustaining the plea of *res judicata*, and affirming the judgment of the lower court. A rehearing was granted by that tribunal, and the case was transferred to the present court for examination on the rehearing. As the first opinion is overruled by this decision its publication in the reports is omitted.