## CITY BANK OF WHEELING v. RHODEHAMEL.

(Circuit Court of Appeals, Fourth Circuit. May 27, 1915.)

No. 1305.

1. CORPORATIONS ⚖118—SALE OF STOCK—WAIVER OF RIGHTS BY BUYER.

Plaintiff claimed that he purchased certain stock from defendant, and that on tender of payment of his note for the price defendant refused to deliver the stock. Defendant contended that the stock was claimed by W.'s assignee, that plaintiff arranged with it not to deliver the stock to such assignee until the determination of a suit by the assignee, and that plaintiff's note was delivered to indemnify it on account of this arrangement. Plaintiff wrote a letter, in answer to one from defendant, stating that his understanding was that he bought the stock, but that he presumed it would do no damage "to be held as you say until after the court passes on the W. matter." *Held*, that this letter was not a waiver or modification of plaintiff's claim of ownership by a purchase of the stock, and was no defense to an action against defendant for conversion of the stock.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 497, 498; Dec. Dig. ⚖118.]

2. ESTOPPEL ⚖77—ESTOPPEL TO DENY TITLE.

While a plaintiff, suing for conversion, must prove title and right of possession, where plaintiff purchased corporate stock from defendant, who claimed to own it, defendant, when sued for conversion thereof, was estopped to deny plaintiff's title.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 198-203; Dec. Dig. ⚖77.]

3. JUDGMENT ⚖678—CONCLUSIVENESS—MATTERS AND PERSONS CONCLUDED.

W. pledged stock as collateral security for borrowed money, and on October 7th made an assignment. The assignee on October 15th brought a suit, alleging that there were conflicting claims to the stock pledged, and that R. claimed and represented that he was the owner of certain stock part of which was pledged to the C. Bank and had demanded such stock. It made R. and the bank defendants, and prayed a determination of the adverse claims and the interest which passed to the assignee. The bank answered on October 17th, alleging the loan to W. on the security of the stock, and R. answered on December 2d. The suit resulted in a decree directing the C. Bank to deliver the stock to the assignee. R. claimed that on October 19th the bank, claiming to own the stock, sold it to him, and subsequently converted it by refusing to deliver it upon payment of the note given for the purchase price, while the bank claimed that R. arranged with it not to deliver the stock to the assignee and gave the note to indemnify it on account of such arrangement. *Held*, that the decree was not res judicata in a suit by R. against the bank for

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

conversion, as the assignee's suit raised no issue of title as between R. and the bank, and gave him no standing to litigate the issue of title as between the assignee and the bank, and the pendency of such suit did not prevent the bank from claiming to be absolute owner of the stock and assuming to sell it, as R. claimed was done.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1195–1199, 1221; Dec. Dig. ☞678.]

4. TROVER AND CONVERSION ☞37—EVIDENCE—ADMISSIBILITY.

In a suit by R. against the bank for conversion, the record in the assignee's suit, including the bill of complaint, the answers of the bank and R., the amended bill of complaint, the commissioner's report, and R.'s exceptions thereto, should have been admitted as bearing upon the fact whether R. became an innocent purchaser of the stock for value, or whether the transaction with the bank was as claimed by it.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 225–227; Dec. Dig. ☞37.]

5. APPEAL AND ERROR ☞1056—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

The rejection of such evidence was not harmless, as the facts and circumstances thereby appearing were of such significance that, if they had been taken into consideration, the jury might have rendered a different verdict.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4187–4193, 4207; Dec. Dig. ☞1056.]

In Error to the District Court of the United States for the Northern District of West Virginia, at Philippi; Alston G. Dayton, Judge.

Action by B. F. Rhodehamel against the City Bank of Wheeling. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with instructions.

John C. Palmer, Jr., and John J. Coniff, both of Wheeling, W. Va. (William Erskine and Joseph R. Curl, both of Wheeling, W. Va., on the brief), for plaintiff in error.

John A. Howard and J. M. Ritz, both of Wheeling, W. Va., for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and WADDILL, District Judge.

KNAPP, Circuit Judge. The defendant in error (plaintiff below) sued the City Bank of Wheeling for the conversion of 138 shares of La Belle Iron Works stock. His contention in brief was that on or about the 17th of October, 1908, he bought outright from the defendant bank 126 shares of this stock, which the bank then had in its possession and claimed to own, for the sum of $14,668.42; that this sum was paid with his note at four months, secured by the 126 shares purchased and 12 additional shares, which he delivered a few days later; and that the bank failed and refused to surrender the note and return to him the stock pledged for its payment when he demanded the same and tendered the amount due on the 6th of June, 1911.

The bank set up in defense, among other things, that the 126 shares in question were hypothecated with it by one A. L. White, of the brokerage firm of White & White, to secure the payment of his note

for $14,668.42, which became due on the 17th of October, 1908; that on the 7th of that month the firm of White & White and A. L. White individually made an assignment for the benefit of creditors to James Morgan Clark, who claimed to be entitled as such assignee to the stock so pledged by White; that the plaintiff Rhodehamel also claimed to be the owner of this stock and demanded its delivery to him; that the bank did not sell or offer to sell the stock to Rhodehamel at any time; that he was informed by the bank of the claim of White's assignee, and thereupon arranged with the bank to give his own note for the $14,668.42, in addition to the note of White, which the bank held, on condition that the bank would not deliver the 126 shares to the assignee, but would hold the same to enable Rhodehamel to prove his ownership of the stock in a pending chancery cause brought by the assignee in a state court; that to further protect the bank in carrying out this arrangement he put up 12 additional shares of Iron Works stock; that on the 19th of July, 1909, the assignee tendered to the bank the amount then due on White's note and demanded delivery of the stock to him, which the bank refused at the special instance and request of Rhodehamel; that the decree in the chancery cause on the 29th of April, 1911, awarded the 126 shares of stock to the assignee, and directed delivery of the same to him on payment of $12,246.87, which was the amount due on White's note when the assignee made the tender of July 19, 1909; that the bank complied with this decree, upon receipt of the sum named, on the 2d of May, 1911; that by reason of holding the stock under the agreement with Rhodehamel the bank had suffered a loss of interest in the sum of $1,565.55, for which it claimed a lien upon the 12 shares remaining in its hands; and that it has always been ready, upon the payment of this interest, to surrender Rhodehamel's note and the 12 shares of stock pledged by him as aforesaid.

It will thus be seen that the question of fact submitted to the jury was whether the bank actually sold to Rhodehamel in October, 1908, the 126 shares of stock which were then in its possession, or whether it merely agreed at his request, and in consideration of the security of his note and 12 additional shares, to hold the stock until the chancery suit was decided. On this issue the jury found for Rhodehamel, and the case comes here on assignments of error which will be briefly considered. The bank insists that Rhodehamel cannot maintain his action: (1) Because he waived his right to demand the stock; (2) because he had no title to the stock when the suit was brought; and (3) because the record in the chancery cause is res adjudicata in this action, and therefore the trial court should have directed a verdict in favor of the defendant.

[1] The only basis for the first objection is Rhodehamel's answer, on November 9, 1908, to a letter from defendant's cashier, in which he says:

"Your letter of the 7th at hand and contents noted. My understanding was that I had bought the 126 shares from you and that it was a closed incident. I presume, however, that it will not do any damage to be held as you say until after the court passes on the White matter."

It is impossible to see in this answer any waiver of Rhodehamel's claim to be the owner of the stock. On the contrary, it asserts the purchase which he alleges and is entirely consistent with his contention. His assent to the note and collateral remaining in the bank did not modify his claim of ownership, or operate to waive his right to demand the stock upon payment of his note. The correspondence was entitled to proper consideration by the jury, but plainly did not constitute a defense to the action.

[2] It is insisted in the second place that the action must fail because Rhodehamel had no title to the stock. But we are of opinion, in view of the verdict of the jury, that this contention cannot be sustained. The verdict for Rhodehamel necessarily involved the finding that the bank claimed to be the owner of the 126 shares and offered to sell the same to Rhodehamel, that the transaction was an absolute sale to him for an agreed price, and that as against the bank he was an innocent purchaser for value. This being so, it seems indisputable that the bank cannot question his title. It is, of course, familiar doctrine that the plaintiff in an action for conversion must prove title and right of possession. It is equally well settled that such an action may be defeated by proof that the plaintiff had no title, or that the title was in another person; but, where the plaintiff's title is derived from the defendant, the latter is estopped from denying it. The jury has found that Rhodehamel was a bona fide purchaser of this stock from the bank, and the bank cannot be heard to dispute the title which it had itself conferred.

[3-5] The governing principle is laid down, and illustrated with numerous citations, in 16 Cyc. 784 to 795, as follows:

"Where a person has, with knowledge of the facts, acted or conducted himself in a particular manner, or asserted a particular claim, title, or right, he cannot afterwards assume a position inconsistent with such act, claim, or conduct to the prejudice of another."

In considering the third objection, some further facts in regard to the chancery suit may properly be stated. The assignment of the Whites was on the 7th of October, 1908. The bill filed by the assignee on the 15th of that month alleged that White & White, with the consent of the respective owners, had pledged as collateral for moneys borrowed by them various securities, including a large amount of La Belle Iron Works stock; that there were conflicting claims to these securities, which the assignee was unable to determine; that Rhodehamel claimed to own all the La Belle stock held by the several banks which were made defendants, and demanded that the assignee surrender to him any claim to the same. The purpose of the suit was to have these adverse claims and the interest which passed to the assignee adjudicated. Both Rhodehamel and the City Bank were among the defendants named in that suit. The bank answered on the 17th of October, setting up the loan to White on the security of the 126 shares, and other facts substantially as above summarized. Although the note given by Rhodehamel bears the same date, the 17th of October, the transaction, which he alleges and the jury found was a purchase of this stock, actually occurred on the 19th of Octo-

ber, two days later. Rhodehamel answered December 2, 1908. As above stated, the decree of April 29, 1911, directed the bank to deliver this stock to the assignee, and the bank contends that this decree was an adjudication which operated to defeat Rhodehamel's action.

But that suit raised no issue of title as between Rhodehamel and the bank, nor did it give Rhodehamel any standing to litigate the issue of title as between White's assignee and the bank. Parties to an action are not bound by the judgment, in a subsequent controversy with each other, unless they were adversary parties in the original suit. As between Rhodehamel and the assignee it may be assumed that the decree was conclusive, but it did not have the effect of settling any question between Rhodehamel and the bank. In other words, the pendency of the chancery suit, and the rights therein asserted by the assignee, did not prevent the bank from claiming to be the absolute owner of the stock and assuming to sell the same to Rhodehamel; and manifestly the decree afterwards made in that suit did not enable the bank to dispute the title which the jury found it had undertaken to confer. Freeman on Judgments (4th Ed.) vol. 1, § 158; Russell v. Place, 94 U. S. 606, 24 L. Ed. 214; St. Romes v. Levee Cotton Press Co., 127 U. S. 614, 8 Sup. Ct. 1335, 32 L. Ed. 289; Harrison v. Remington Paper Co., 140 Fed. 385, 72 C. C. A. 405, 3 L. R. A. (N. S.) 954, 5 Ann. Cas. 314.

On the trial, which took place in November, 1913, the defendant offered in evidence the record in the chancery suit, including the bill of complaint, answer of the City Bank, answer of Rhodehamel, order of January 22, 1909, amended bill of complaint, report of William E. Krupp, commissioner, exceptions of Rhodehamel to the report, order of February 11, 1911, order of April 29, 1911, deposition of James Morgan Clark, and Exhibit Y thereto. The court admitted the three orders enumerated, but excluded the balance of the record. The order of January 22, 1909, merely allowed the plaintiff to file an amended complaint; the order of February 11, 1911, disposed of some of the matters in suit and postponed others for further consideration; the order of April 29, 1911, overruled the exceptions of Rhodehamel, confirmed the findings of the commissioner, and was a final decree.

We are of opinion that it was error to reject this record, or so much of it as was offered, not because it determined any issue raised in this case, but because of its bearing upon the question of fact submitted to the jury, namely, whether Rhodehamel became an innocent purchaser for value of this stock in October, 1908, as he testified, or whether the transaction at that time was of the nature asserted by the bank, as above stated.

In the first place, the amended complaint in that suit set forth in detail the somewhat peculiar situation which had arisen in respect of the dealings in La Belle Iron Works stock by White & White for the account of Rhodehamel, the hypothecation of that stock by them with various banks to secure their own notes, and the conflicting claims of ownership of the stock so pledged. Moreover, it alleges that soon after the failure of the Whites on the 7th of October, and before suit was brought on the 15th of that month, Rhodehamel had represented to the assignee that all this stock which the Whites had hypothecated

in the Wheeling banks belonged to himself. Indeed, it was largely on account of this claim and demand of Rhodehamel that the assignee brought the chancery suit. It also appears in the record that on the 17th of October, which was two days before the alleged purchase, the bank had filed its answer in that suit, in which it stated fully the circumstances under which the 126 shares came into its possession, and averred that it held the same only as security for the payment of White's note. And it further appears, from Rhodehamel's answer and otherwise, that throughout the course of the litigation no claim was made by him that he had at any time purchased Iron Works stock from the City Bank. We think that these were circumstances which the defendant was entitled to show, and that they were so related to the issue submitted to the jury as to make them admissible. In short, the ruling of the court excluded documentary evidence which, in our judgment, was relevant and material. And it cannot be said that the rejection of this evidence was harmless, because the facts and circumstances thereby appearing were of such significance that if they had been taken into consideration the jury might have rendered a different verdict.

Because of this error the judgment must be reversed, and the case remanded, with instructions to grant a new trial.

Reversed.