**NATIONAL BONDHOLDERS CORPORA-
TION v. SEABOARD CITIZENS NAT.
BANK OF NORFOLK, VA.**
No. 4561.

Circuit Court of Appeals, Fourth Circuit.
Feb. 2, 1940.

On Petition for Rehearing March 9, 1940.

Ralph Wolf, of New York City (John W. Oast, Jr., of Norfolk, Va., and Milton Klein and Hays, Wolf, Kaufman & Schwabacher, all of New York City, on the brief), for appellant.

James Mann and S. Heth Tyler, both of Norfolk, Va. (Mann & Tyler, of Norfolk, Va., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and COLEMAN, District Judge.

SOPER, Circuit Judge.

The purpose of this suit is to establish an obligation on the part of the trustee under a collateral trust indenture or bond mortgage to pay to the certificate or bondholders or their representative, a sum of money paid to the mortgagor in the liquidation of certain collateral notes which had been deposited with the trustee as security for the payment of the bonds. The money received by the mortgagor was used by it for its own purposes and was not turned over to the trustee as it should have been; and the collateral remained in the hands of the trustee.

The plaintiff's theory is that the mortgagor received the funds, as the agent of the trustee, and that in legal effect payment to the former was payment to the latter; and it is contended that the liability of the trustee to the bondholders has been conclusively established by previous litigation in the State courts of North Carolina in which it was held that the collateral notes had been legally paid to the collecting agency of the trustee.

The collateral trust indenture dated August 1, 1926 was executed on October 14, 1936 by Guaranty Title & Trust Corporation, a Virginia mortgage company located at Norfolk, Virginia, as mortgagor, to the Citizens National Bank of Norfolk, as trustee. This bank and its successor trustee, the Seaboard Citizens National Bank of Norfolk, will be referred to herein as the bank or the trustee. By the indenture the Guaranty Company delivered and pledged to the trustee certain notes secured by mortgage on real estate, United States bonds and other securities as collateral, to secure the payment of certain certificates or bonds payable to bearer issued by it. The National Surety Company guaranteed the payment of the bonds; and the collateral deposited with the trustee was given also for its protection since if it was called upon to pay the bonds, it was entitled to an assignment thereof and to subrogation to the rights of the bondholders.

Amongst the collateral deposited with the trustee were seven notes of George B. Lazarus in the aggregate sum of $5,500 payable to bearer at the office of the Guaranty Company in Norfolk at certain intervals during the period from 1928 to 1931, and secured by a deed of trust or mortgage of August 16, 1926 from Lazarus and wife to the Citizens National Bank, trustee, on real estate in Henderson County, North Carolina. Prior to April, 1929, Lazarus had paid the principal and interest notes as they matured, and had received the paid notes and interest coupons from the Mortgage Company, which had obtained them from the trustee.

In April, 1929, Lazarus was permitted by the Mortgage Company to anticipate the payment of his remaining notes, and paid the indebtedness in full with interest to August 16, 1929, plus an anticipation fee of $300, amounting in all to $5365. This sum was paid by check payable to the order of the Guaranty Company dated May 2, 1929, and bearing the notation that it was given in payment of the loan principal, anticipation fee and interest. The check was given by the attorneys of the Equitable Life Assurance Society, from whom Lazarus had obtained a loan on the same real estate, the attorneys acting also as the attorneys for Lazarus in the transaction. The payment was made to the Guaranty Company upon its assurance that the trustee had been notified and was willing to accept payment of the notes; but the trustee had not been so notified and the notes remained in its possession until they were turned over by it to the National Bondholders Corporation, a representative of the bondholders, and the plaintiff in this case, in March, 1935, together with other securities under the circumstances presently to be recited. The attorney's check was deposited by the Guaranty Company in its checking account with other items in the commercial department of the bank and was handled as an ordinary customer's item for collection and credit. The commercial department of the bank was located in a separate building at some distance from the trust department. No part of the proceeds of the check was paid to the trustee in payment of the Lazarus notes, and the trustee had no knowledge of the transaction.

On June 26, 1929, the Guaranty Company was placed in the hands of receivers in the Circuit Court of the City of Norfolk, and on December 9, 1929, it was adjudicated a bankrupt in the District Court below. The indenture gave the Surety Company the right to direct and control the method and place of conducting any proceeding for the sale of securities, or of any other proceeding taken under or subject to the indenture with respect to the securities if any proceedings had been instituted for the enforcement of the indenture as to any of the certificates. On October 17, 1929, the trustee filed a petition in the receivership proceeding of the Guaranty Company for the purpose of enforcing the indenture as to the outstanding certificates, and secured a decree approving a plan proposed by the Surety Company and stated by the trustee to be to the best interests of all concerned, whereby the Surety Company undertook to complete the foreclosure proceedings begun by the Guaranty Company against forty properties in North Carolina, and to institute and carry through the foreclosure of other loans as would from time to time be necessary. After bankruptcy, this procedure was also approved by the Bankruptcy Court on February 3, 1930. At the time that the petition was filed by the trustee in the receivership

proceeding, the Guaranty Company was in default under the indenture, but the Surety Company was not in default under its guaranty.

After the receivership proceedings had been instituted against the Guaranty Company, the trustee learned of the Lazarus payments and of two other similar payments by other borrowers, and called upon the Surety Company to instruct it as to the position it should take with reference thereto. In response to the trustee's inquiry, the Surety Company, through its attorney, on October 11, 1929, advised the trustee that it should take the position that the Lazarus payments were made to the Guaranty Company as Lazarus' agent, and did not discharge his obligation on the notes held by the trustee. The attorney pointed out that although the trust indenture did not specifically make the Guaranty Company the agent for the trustee for the purpose of making collections, the indenture seemed to assume that the Guaranty Company would make such collections. He referred to certain provisions of the indenture which contemplated an exchange of information between the Mortgage Company and the trustee with respect to collections made by each of them, and to provisions which gave the trustee the right to reasonable compensation for services rendered in the collection of monies under certain conditions, and also gave it the right to exercise its powers through agents or attorneys, with the provision that where the trustee should appoint an agent or attorney to collect money, the trustee should require him to hold the collections as trust funds, and should be responsible for all collections so made. Notwithstanding these provisions in the indenture, the attorney was of the opinion that the trustee was not liable for the Lazarus payments, because it had not expressly appointed the Guaranty Company as its agent.

On April 13, 1931 the Equitable Life Assurance Society instituted a proceeding in the Superior Court of Henderson County, North Carolina, to recover from Lazarus the sum which he had borrowed from it. The complaint also prayed for a decree of foreclosure and sale of the mortgaged premises; the application of the proceeds to the payment of the debt, and also an adjudication that the indebtedness secured by the prior deed of trust from Lazarus to the Guaranty Company had been fully paid, and that said deed of trust should be adjudged a cloud on the title to the land and be cancelled of record. The defendants joined in the suit were Lazarus and wife, the trustee under the deed of trust to the Equitable Society, the Guaranty Company, the trustee in bankruptcy of the Guaranty Company, the trustee under the indenture (that is, the defendant in the pending suit), the Surety Company and the Greyling Realty Company, a subsidiary of the Surety Company. At the request of the Surety Company the trustee under the indenture, defendant herein, appeared in said suit and filed an answer through an attorney who also appeared and answered on behalf of the Surety Company. In said answer it was alleged that the trustee had never received the money paid by Lazarus to the Guaranty Company, and that the Guaranty Company was not the agent of the trustee and had no authority to receive the money on its behalf, and that the Lazarus notes held by the trustee had not been paid, and that the Equitable Society was not entitled to a surrender or cancellation thereof.

A jury trial was waived. Two issues were submitted and answered by the judge as follows:

"(1) Have the Lazarus notes and deed of trust, being those in controversy in this action and now held by the defendant Seaboard Citizens National Bank, trustee, been legally paid and discharged as alleged in the complaint? A. No.

"(2) If not, what is due said Seaboard Citizens National Bank on account of said notes and deed of trust? A. $5,000 with interest from February 16, 1929."

The court held as a matter of law, upon all the evidence, that the payment to the Guaranty Company did not operate to discharge the bonds held by the bank as trustee, and therefore answered the issues accordingly. It was adjudged in the decree that the Lazarus notes had not been satisfied and discharged, and that the bank, as trustee, might forthwith proceed with the sale of the lands in accordance with the power of sale in the deed of trust.

An appeal was taken, and this decree was reversed by the Supreme Court of North Carolina, Equitable Life Assur. Soc. v. Lazarus, 207 N.C. 63, 175 S.E. 705. The appellate court said that it was error on the part of the judge below to hold as a matter of law that the Lazarus payment to the Guaranty Company did not operate to discharge the bonds, if there was any evidence of agency in the record. The court then pointed out that the trustee received the

notes, including those of Lazarus, under the indenture; that the indenture expressly empowered the trustee to employ agents and pay them such reasonable compensation as it deemed proper, and expressly authorized the trustee to appoint the Guaranty Company its agent for the collection of monies due the trustee on the securities pledged, and also provided that if the Guaranty Company should refuse to act as agent for the trustee for the collection of the money, the trustee itself was to receive reasonable compensation for any services it might render. The court also showed that for practically three years Lazarus had made payments of interest to the Guaranty Company, and that the bank received the money without protest and turned over the notes to the Guaranty Company; that the trustee knew that the Guaranty Company was collecting notes from Lazarus and from others, and that the Guaranty Company maintained a collection department for the express purpose of making collections from hundreds of borrowers whose notes were in the possession of the bank. Comment was made upon the testimony of the trust officer of the bank to the effect that he presumed, during the course of business under the indenture, that the Guaranty Company was making collections on the collaterals. The court held that where there is evidence tending to show that an alleged agent has repeatedly collected money owing to the alleged principal, and that the alleged principal has received the money and applied it to debts, the inference is presumably that an agreement to that effect had been made between them and the evidence is sufficient to make out a prima facie case of agency. The court therefore reversed the judgment and granted a new trial.

The judgment of the Supreme Court of North Carolina was rendered on September 19, 1934. In the meantime, on April 29, 1933, the Surety Company had become insolvent and its affairs had been placed in the hands of the Superintendent of Insurance of the State of New York as liquidator. In the course of the liquidation the National Bondholders Corporation, plaintiff herein, was organized to acquire the securities and the collateral applicable thereto, and to manage and liquidate the same and to enforce rights and causes of action against the Surety Company and others.

Pursuant to an order of the United States District Court of the Eastern District of Virginia of February 16, 1934, passed in the reorganization proceedings of the Guaranty Company under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, the National Bondholders Corporation also acquired all the rights and claims of the bondholders; and in accordance with this order, the bondholders turned over their bonds, and the bank-trustee turned over the collateral in March, 1935.

When the bank-trustee was informed by its North Carolina attorneys that a second trial of the suit of the Equitable Society against Lazarus and others would be had in North Carolina, it wrote on May 6, 1935 to the attorneys that the trust had been taken over by the National Bondholders Corporation, and suggested that that corporation be asked for instructions. The National Bondholders Corporation retained the same attorneys, who caused it to be made a party defendant to the proceedings in the North Carolina suit, and adopted on its behalf the answer theretofore filed by the bank-trustee. The bank took no part in the second trial of the case, but nevertheless remained a party to the suit. The issues framed at the first trial were submitted to a jury at the second trial and the jury reached a different conclusion and found that the Lazarus notes and deed of trust had been legally paid and discharged, and that nothing was due to the bank as trustee, or its successor, the National Bondholders Corporation, on account of the same. Judgment was entered on January 2, 1937. It was ordered and adjudged that the Lazarus notes had been lawfully paid and discharged; that the Lazarus deed of trust was of no force and effect, and constituted no lien on the lands. The defendants were perpetually enjoined from foreclosing the deed of trust from Lazarus to the bank, and it was ordered cancelled and removed as a cloud upon the title to the land. The bank, as trustee, and the National Bondholders Corporation were ordered to mark the bonds paid and to surrender them to the court for delivery to Lazarus. It was further ordered that the land should be foreclosed and sold to satisfy the indebtedness to the Equitable Society. The costs were taxed against certain defendants with the proviso that that part of the cost which accrued after the National Bondholders Corporation became a party, should not be taxed against the bank as trustee.

The pending suit was brought shortly thereafter on February 11, 1937 by the National Bondholders Corporation against the bank in its individual capacity and as trustee. The complaint prays for a decree that

the defendants pay to the plaintiff the sum of $6,641.60 with interest from May 4, 1929, which sum consists of the Lazarus payments with interest, plus the monies paid by the bank from the cash in its hands as trustee to defray the expenses of defending the North Carolina suit. The complaint proceeds on the ground that the Guaranty Company was acting as the agent of the bank in making the collections from Lazarus; that the agency was established both by the terms of the indenture and by the course of conduct of the parties; that the bank had notice from the legend on the check, given in payment of the Lazarus notes, that the money was paid in liquidation thereof, and yet knowingly permitted the Guaranty Company to deposit this check in its commercial account and use it for its own purposes; and that the liability of the bank to the bondholders for the money is res adjudicata by reason of the North Carolina litigation to which both the plaintiff and the defendant herein were parties.

The District Judge found the facts substantially as hereinbefore set out, but reached the conclusion that the North Carolina judgment, taken alone or in connection with the pertinent facts of the case, did not sustain the claim of res adjudicata, and that therefore the plaintiff was not entitled to recover of the defendant, either in its own right or as trustee, and ordered that the bill of complaint be dismissed. The record shows that in other litigation in the State courts of Virginia, involving the liability of the bank as trustee for collections made from other borrowers by the Guaranty Company, the courts decided that the Guaranty Company in making the collections was the agent of the borrower and not of the trustee, and that neither the terms of the indenture nor the course of conduct of the parties warranted the contrary conclusion. The question of res adjudicata was not involved in these suits.

The parties are in agreement that the question on this appeal is whether the facts established by the North Carolina judgment are binding upon the bank. It is well settled that a fact or question which was actually and directly in issue in a former suit, and was there judicially determined by a court of competent jurisdiction, is conclusively settled by the judgment therein so far as concerns the parties to that action and persons in privity with them, and cannot be again litigated in any future action between the parties or privies in the same or any other court upon either the same or a different cause of action. Oklahoma v. Texas, 256 U.S. 70, 41 S.Ct. 420, 65 L.Ed. 831; Postal Telegraph Cable Co. v. Newport, 247 U.S. 464, 38 S.Ct. 566, 62 L.Ed. 1215; Hart Steel Co. v. Railroad Supply Co., 244 U.S. 294, 37 S.Ct. 506, 61 L.Ed. 1148; Richmond v. Davis, 135 Va. 319, 116 S.E. 492; Douglas Land Co. v. T. W. Thayer Co., 113 Va. 239, 74 S.E. 215; 34 Corpus Juris, 868.

The defendant bank contends that this rule is not applicable in the pending case for a number of reasons: (1) It is said that the record in the pending case does not clearly show that the question now at issue is the same as that in controversy in the North Carolina litigation. It is pointed out that the only part of the record in the latter case that is in evidence here consists of the pleadings, the questions propounded to the jury and their answers, and the judgment of the court. The important issue and the answer thereto were: "(1) Have the Lazarus notes and deed of trust, being those in controversy in this action, and now held by the defendant, Seaboard Citizens National Bank, Trustee, or its successor trustees, National Bondholders Corporation, been legally paid and discharged, as alleged in the complaint? A. Yes."

It is contended that when reference is made to the complaint, including therein the reply of the plaintiff to the answer, a number of allegations are found which set up different theories for recovery, and hence it cannot be said with certainty upon which theory the jury based its verdict. The plaintiff's pleadings charge: (a) that the Lazarus monies, paid to the Guaranty Company, were delivered by it to the trustee and accepted by it in payment of the Lazarus notes. It is admitted that if the verdict in the North Carolina case was based on this ground, the bank trustee might be bound by the finding, but it is said that there are other theories set out in the pleadings on which the verdict may have been based, as follows: (b) that by the terms of the indenture, the Guaranty Company was constituted the agent of the bank trustee for the purpose of collecting the notes, including the Lazarus notes; (c) that the relationship of principal and agent, between the bank trustee and the Guaranty Company, was created by the acts and conduct of the parties; (d) that the bank trustee was estopped to deny the agency since by long established custom, it permitted the Guaranty Company to deposit the funds collected by it in its general check-

ing account and to use the same for its own purposes, and that the bank-trustee was further estopped by its delay in taking action in having its claim adjudicated; and (e) that by the collateral trust indenture, the Guaranty Company was created the agent of both the bank trustee and of the bondholders for whose benefit it was created, and the jury's finding did not indicate which of the two was the principal.

We think that this contention is without merit. It is immaterial that the plaintiff put forth different theories entitling it to recover, if all of them involve as an essential element the collection of monies by the Guaranty Company as the agent of the trustee, whether the agency was established by the terms of the indenture or by the acts and conduct of the parties, or the facts were such as to estop the bank from denying the existence of the agency. Nor was any uncertainty introduced by the allegation that the trust indenture created the Guaranty Company as the agent both of the bank trustee and of the bondholders. The allegation is in the conjunctive, and if the jury's verdict was based thereon, it involved the prima facie conclusion that the Guaranty Company was the agent of both the bank and the bondholders. In view of the position of the trustee as the representative of the bondholders, its admitted possession of the Lazarus and other notes in course of collection, and the payment of the monies collected by the Guaranty Company to the trustee in the ordinary course of business, there is no reason to suppose, in the absence of any evidence to the contrary, that the jury found that the Guaranty Company was the agent of the bondholders and not the agent of the bank trustee.

In the second place, it is contended that the rule of res adjudicata does not apply to this controversy between the National Bondholders Corporation, as the representative of the bondholders, and the bank trustee, because they were not adversary parties to the North Carolina action but were joint defendants therein. Ordinarily, parties to a judgment are not bound by it in a subsequent controversy between each other unless they were adversary parties in the original action. City Bank of Wheeling v. Rhodehamel, 4 Cir., 223 F. 979; Freeman on Judgments, 5 Ed. vol. 1, §§ 422-425, but there are exceptions to the rule, as where co-parties do in fact occupy the attitude of adversaries, e. g., Atchison, T. & S. F. R. Co. v. A. B. C. Fireproof Warehouse Co., 8 Cir., 82 F.2d 505; or where some finding of fact is made in the first suit which is an essential element in a claim or action subsequently brought by one against the other. As said in Freeman on Judgments, § 425, "insofar as their rights or obligations inter se are dependent on their rights or obligations toward their common adversary, the judgment adjudicating the latter is conclusive upon codefendants in subsequent litigation between them". Thus it was held in United States Fidelity & Guaranty Co. v. Haggart, 8 Cir., 163 F. 801 (Sanborn, Van Devanter and Munger), that a judgment recovered by the United States against a marshal and the surety on his bond, on account of defalcation by the marshal's deputies, is conclusive of the existence of the defalcations and of the amount thereof in a subsequent action brought by the marshal against the surety on another bond, whereby the Surety Company bound itself to indemnify the marshal for every act done or neglected to be done by the deputies. See, also, Corcoran v. Chesapeake & Ohio Canal Co., 94 U.S. 741, 24 L. Ed. 190; The No. 34, 2 Cir., 25 F.2d 602, 606; Kent's Adm'r v. Kent's Adm'r, 82 Va. 205; Ellis v. Cole, 105 App.Div. 48, 94 N.Y. S. 1031.

In the third place, the defendant denies that the controverted issue in this case is res adjudicata because the plaintiff now seeks to establish the liability of the bank in its individual capacity, whereas the bank was party to the North Carolina suit only in its capacity as trustee. The emphasis is on the established principle that a former judgment or finding is not conclusive in a second suit unless the latter is between the same parties acting in the same right or capacity. Thus, for instance, a judgment against a person claiming property in his own right does not ordinarily preclude him from subsequently claiming the same property as trustee for other persons. But no such diversity exists between the interests represented by the bank in the two cases now under consideration. It was made defendant, as trustee, in the North Carolina suit because it held the Lazarus notes and the Lazarus deed of trust as trustee for the bondholders. It was made party defendant as trustee and also in its own right in the pending suit in order to enforce a personal liability against it. But it is obvious that in the first case, as in the second, the bank had the opportunity to defend, and did defend itself in its personal capacity. It could not do otherwise as it strove to show that it had

no responsibility for the actions of the Guaranty Company in making the collections. It cannot now escape the finding that the Guaranty Company acted as its agent in collecting the money, or the personal responsibility which flowed therefrom. The identity of interest in both cases is emphasized by the fact that the bank executed the indenture in its individual capacity and therein agreed to accept responsibility for monies collected by its agent. See Taylor v. Davis, 110 U. S. 330, 334, 335, 4 S.Ct. 147, 28 L.Ed. 163.

■ The situation became all the more clear at the second trial when the National Bondholders Corporation represented the then existing rights of the bondholders, while the bank remained a proper party, since it was during its regime as trustee that the Lazarus money was paid and the responsibility to account for it arose. The bondholders, being thus represented, were bound by the adverse decision. Richter v. Jerome, 123 U.S. 233, 8 S.Ct. 106, 31 L.Ed. 132. It would be a strange result if the corporation which represented the bondholders at the time of the receipt of the monies and was also party to the suit, should be held entitled to relitigate the issue on its own account. The point under discussion should be disposed of in conformity with the principle laid down in Chicago, R. I. & P. R. Co. v. Schendel, 270 U.S. 611, 620, 46 S.Ct. 420, 424, 70 L.Ed. 757, 53 A.L.R. 1265, where it was said: "Identity of parties is not a mere matter of form, but of substance. Parties nominally the same may be, in legal effect, different * * * and parties nominally different may be, in legal effect, the same".

■ The additional point seems to be made that the bank is not bound by the North Carolina decision because in that case it submitted to the direction of the Surety Company, under the authority conferred upon the Surety Company by the indenture to control the method of conducting proceedings taken thereunder. It is not perceived how this circumstance affects the rule of res adjudicata or the responsibility of the bank. It assented to the provision of the indenture when it became a party thereto, and surrendered, to some extent, its independence of action. This was its voluntary act and the defense set up in the North Carolina case must be regarded as its own act to the same extent as if it had not cooperated with the Surety Company. Furthermore, it does not appear that the bank's interests were in any way prejudiced, or that its defense to the suit was in any way hampered by association with the Surety Company. The interests of each were served by the defense that was made, since it was beneficial to each to show, if possible, that the Lazarus notes had not been legally paid.

■■ Little need be said with respect to the contention that the National Bondholders Corporation, having elected to take the position in the North Carolina suit that the Guaranty Company was not the agent of the trustee in making the collection from Lazarus, is estopped in the present suit from asserting the opposite as the basis of the bank's liability. The defense in the North Carolina suit proceeded on an hypothesis, which was proved by the event to have no existence in fact. It is well established that if a party through mistake attempts to exercise a right to which he is not entitled, he is not thereby prevented from exercising one which he had and still has unless barred by the previous attempt. William W. Bierce v. Hutchins, 205 U.S. 340, 347, 27 S. Ct. 524, 51 L.Ed. 828; Strathleven S. S. Co. v. Baulch, 4 Cir., 244 F. 412; Midland Savings & Loan Co. v. Trademen's Nat. Bank, 10 Cir., 57 F.2d 686.

■ It is finally insisted that the bank is relieved from all responsibility because the indenture provides that the trustee shall not be liable "except as otherwise in this trust indenture. expressly provided" for any error of judgment or for any act of omission, "except only for its own gross negligence or wilful default". This provision does not support the defendant's contention. As we have pointed out, it was expressly provided in the indenture that the trustee should be responsible for the monies collected by the agent appointed by it. The North Carolina judgment established the agency and the collection by the agent, and consequently the exoneration of the bank from liability for its acts under the provision referred to has no relevance to the facts of this case.

■ The judgment must be reversed and the case remanded for a new trial; but nothing in this opinion should be taken as an approval of the additional claim of the appellant that the bondholders should be reimbursed by the bank for the funds expended by it in the defense of the North Carolina action. The indenture provides that the Mortgage Company shall reimburse the trustee on demand " * * * and save it harmless against any and all liability, disbursement and expenses, including counsel

fees, which it may incur hereunder. For such liability, disbursements and expenses a first lien is hereby imposed in favor of the trustee upon the collateral deposited hereunder and/or the income in priority to the Certificates issued hereunder."

Reversed and remanded.

PARKER, Circuit Judge (dissenting).

I am of opinion that the judgment appealed from should be affirmed on any one of three grounds: (1) that it was not necessarily adjudicated in the North Carolina suit that the Guaranty Company was the agent of the Bank-Trustee in accepting the payment made by Lazarus; (2) that the Bank-Trustee was a mere formal party to the North Carolina suit at the time of the entry of the judgment relied upon as an estoppel; and (3) that the Bank-Trustee was not a party to the North Carolina suit in its individual capacity but merely as trustee.

The Bank-Trustee is chargeable under the trust indenture with payments received by an agent which it had appointed. It is not chargeable, however, with payments made to one professing to act as its agent who was not in fact such, unless chargeable with liability therefor because of gross negligence or wilful default. The question of gross negligence or wilful default was not involved in the North Carolina suit, nor was the agency of the Guaranty Company necessarily adjudicated therein. It was alleged, it is true, that the Guaranty Company was the agent of the Bank-Trustee in making the collection; but it was also alleged that the Bank-Trustee was estopped to deny the agency of the Guaranty Company because of the course of dealing which had been followed. The decision in favor of Lazarus may well have been based on the latter ground; and this would not establish liability on the part of the Bank-Trustee to the bondholders for the moneys received and converted by the Guaranty Company. The North Carolina judgment, therefore, cannot be held to establish the liability of the Bank-Trustee for the collection, for it is well settled that where judgment may have been predicated upon one of several grounds, it does not estop as to any of them in the absence of extrinsic evidence showing the precise point upon which the decision was based. Russell v. Place, 94 U.S. 606, 24 L. Ed. 214; De Sollar v. Hanscome, 158 U.S. 216, 15 S.Ct. 816, 39 L.Ed. 956; Chrisman's Adm'x v. Harman, 29 Grat. 494, 69 Va. 494, 26 Am.Rep. 387; Hairston v. Hairston, 117 Va. 207, 212, 84 S.E. 15; Chakales v. Djiovanides, 161 Va. 48, 170 S.E. 848.

Agency by estoppel does not establish agency in fact. It means merely that the one against whom the estoppel is asserted may not deny the agency as against one who has been misled by his conduct into believing that it existed. A. L. I. Restatement, Agency, § 31; 2 Am.Jur. pp. 86-88; Huffcut on Agency, 2d Ed., pp. 62-71. Only a person so misled may rely upon the estoppel. Where it is successfully asserted against a trustee, the cestui que trust, not having been misled, is in no position to avail himself of the same estoppel. As between him and the trustee, the question is whether the conduct of the latter has been such as to subject him to liability. The trust indenture here provides that such liability depends upon gross negligence or wilful default. These were not adjudicated directly or indirectly by the North Carolina suit; and in his second conclusion of law, which is not questioned, the District Judge found that they did not exist, saying: "2. The defendant was not guilty of gross negligence or wilful default in connection with the payment by Lazarus to the Guaranty Title & Trust Corporation of the amount of the Lazarus notes with interest and anticipation fee, or in connection with the failure of the Guaranty Title & Trust Corporation to pay over to the defendant the amount so received by it, and is not liable to the plaintiff by reason thereof."

As to the second ground, the North Carolina suit was brought to cancel the Lazarus notes and mortgage as a cloud on the title to land. The Bank-Trustee was made a party to that suit because, as trustee, it held the papers which it was sought to cancel. No relief beyond the cancellation of the papers was asked against it as trustee and no relief whatever was asked against it in its individual capacity. Before the judgment which is relied upon as an estoppel was entered, it had transferred the notes and all rights thereunder to the National Bondholders Corporation and thereafter had no further interest in the litigation. While not dismissed from the suit, it was a mere formal party, having no rights in the subject matter. The National Bondholders Association intervened and conducted the litigation; and the Bank-Trustee could not thereafter have made a defense nor have appealed from any judgment entered, for it had ceased to have any rights in the notes and deed of trust, the cancellation of which

was the object of the suit. Such a mere nominal party is not bound by the judgment rendered in the action. 34 C.J. 995; Walker v. Philadelphia, 195 Pa. 168, 45 A. 657, 78 Am.St.Rep. 801; Ashton v. City of Rochester, 133 N.Y. 187, 30 N.E. 365, 31 N.E. 334, 28 Am.St.Rep. 619; Robbins v. Chicago, 4 Wall. 657, 672, 18 L.Ed. 427. As said in the case last cited: "Conclusive effect of judgments respecting the same cause of action and between the same parties rests upon the just and expedient axiom, that it is for the interest of the community that a limit should be opposed to the continuance of litigation, and that the same cause of action should not be brought twice to a final determination. Parties in that connection include all who are directly interested in the subject-matter, and who had a right to make defence, control the proceedings, examine and cross-examine witnesses, and appeal from the judgment."

It must be remembered that the Bank-Trustee was made a party to the North Carolina suit in its fiduciary capacity. After it had parted with the papers which it held as fiduciary and its successor had been made a party to the suit, no question could arise in which it had any interest. The question of payment related to the status of the papers held by its successor, not to the question to its individual liability. If it had sought to appeal from the judgment in favor of Lazarus, its appeal would have been dismissed promptly on the ground that nothing was adjudicated against it by the judgment.

As to the third ground, the only purpose of making the Bank-Trustee a party in the North Carolina suit was to secure cancellation of the papers which it held as trustee; and it was made a party to that suit in its fiduciary capacity. The purpose of this suit is to enforce a personal liability against it. It is well settled that a judgment against one in his representative capacity does not bind him in his personal capacity and vice versa. 34 C.J. 984; 15 R.C.L. 1012-1013; Freeman on Judgments, § 156; Troxell, Adm'x, v. Delaware, etc., R. Co., 227 U.S. 434, 443, 33 S.Ct. 274, 57 L.Ed. 586; Amsterdam First Nat. Bank v. Shuler, 153 N.Y. 163, 47 N.E. 262, 60 Am.St.Rep. 601; Landon v. Townshend, 112 N.Y. 93, 19 N.E. 424, 8 Am.St.Rep. 712; Fuller v. Metropolitan Life Ins. Co., 68 Conn. 55, 35 A. 766, 57 Am.St.Rep. 84 and note; State ex rel. Hospes v. Branch, 134 Mo. 592, 36 S.W. 226, 56 Am.St.Rep. 533; Stockton B. & L. Ass'n v. Chalmers, 75 Cal. 332, 17 P. 229, 7 Am.

St.Rep. 173 and note; Slocomb v. De Lizardi, 21 La.Ann. 355, 99 Am.Dec. 740; Benz v. Hines, 3 Kan. 390, 89 Am.Dec. 594 and note; Bridger v. Asheville, etc., R. Co., 27 S.C. 456, 3 S.E. 860, 13 Am.St.Rep. 653; Rahr v. Wittman, 147 Wis. 195, 132 N.W. 1107, 36 L.R.A.,N.S., 392; Keith v. Willers Truck Service Co., 64 S.D. 274, 266 N.W. 256, 104 A.L.R. 1471; May Coal Co. v. Robinette, 120 Ohio St. 110, 165 N.E. 576, 64 A.L.R. 441.

Plaintiff admitted in the court below that it could not prevail on the merits. (Appellant's appendix 192). It seeks to unload its loss upon the bank, in spite of the limitations of the trust indenture, by invoking the North Carolina judgment, which was rendered after defendant had ceased to be anything more than a nominal party to the suit in which it was rendered and after plaintiff had taken defendant's place therein as holder of the Lazarus notes and mortgage. It seems clear to me that the North Carolina suit did not adjudicate with precision the question upon which defendant's liability depends, and that for that reason as well as for the reason that defendant was no more than a formal party to that suit at the time of the adjudication and, at all events, was not a party in the same capacity there as here, the principle of res adjudicata has no application.

## On Petition for Rehearing.

SOPER, Circuit Judge.

██ The petition for rehearing raises no new point, and must be overruled. It is, however, stated in the petition for rehearing that the National Bondholders Corporation has already received substantial payments on account of its claim against the Surety Company, and that additional payments are expected to be made in the future; and it is suggested that if the corporation also recovers from the bank the amount paid by Lazarus on his notes, then the corporation will have received about 160% on the Lazarus notes. This is a matter for adjustment between the corporation and the Surety Company, and nothing in the opinion is intended to hold that the amount to be paid to the corporation by the bank as the result of the judgment in this case should not be taken into account in ascertaining the amount due to the corporation by the Surety Company.

██ The petition assumes that it was not the intention of the court under any

circumstances to require the bank to pay to the corporation the sum of $300 which was paid by Lazarus to the Guaranty Company as a bonus. This point was not raised in the briefs in this case and was not passed upon in the opinion of the court. It may be considered by the District Court to which the case is remanded for a new trial.