EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, A CORPORATION, v. GEO. B. LAZARUS AND WIFE, HELEN LAZARUS; JAMES L. TAYLOR, JR., TRUSTEE; THE GUARANTY TITLE AND TRUST CORPORATION; H. M. KERR, TRUSTEE IN BANKRUPTCY OF GUARANTY TITLE AND TRUST CORPORATION, A BANKRUPT; SEABOARD CITIZENS NATIONAL BANK OF NORFOLK, VIRGINIA, TRUSTEE; GREYLING REALTY CORPORATION, NATIONAL SURETY COMPANY, A CORPORATION, ETC.

(Filed 19 September, 1934.)

1. **Appeal and Error J c—Where court determines issues as matter of law in case submitted to it by agreement, its findings are not conclusive.**

Where the parties agree that the court should find the facts, its findings upon conflicting evidence are as conclusive as the verdict of a jury, but where under such agreement the court determines the issues as a matter of law, the judgment must be reversed if there is any sufficient evidence contrary to the findings made by the court, although there is evidence to support such findings.

2. **Payment C b—**

Payment by a debtor to the collecting agent of the creditor is payment to the creditor.

3. **Same: Principal and Agent C a—Evidence held sufficient to raise issue of whether party to whom payment was made was collecting agent.**

A mortgage company pledged notes and mortgages executed to it to a trustee bank under a trust indenture to secure the payment of the mortgage company's bonds, the trust indenture empowering the trustee bank to employ agents to collect the pledged notes, and providing that it might employ the mortgage company for this purpose, and that in the event the mortgage company should refuse or be unable to act as collecting agent, the trustee bank should receive reasonable compensation for such services. There was evidence that L.'s notes and mortgage, together with others, were pledged to the trustee bank under the trust indenture, and that thereafter L. paid the mortgage company one note and interest on the debt for three years, and that the trustee bank accepted the money from the mortgage company, surrendered L.'s note and interest coupons, which were canceled by the mortgage company and returned to L. There was also evidence that the trustee bank knew that for three years the mortgage company had been collecting principal and interest on all notes pledged, and maintained a collection office for this purpose. Thereafter L. paid the mortgage company the full balance of his mortgage debt plus an anticipation fee under an agreement that the mortgage and notes be canceled. Before payment to the trustee bank the mortgage company became insolvent, and the trustee bank contended that payment to the mortgage company did not constitute payment to it. *Held*, there was sufficient evidence to raise the issue of whether the mortgage company was a collecting agent for the trustee bank, and the court's determination as a matter of law that payment to the mortgage company did not discharge the debt *is held* for error.

SCHENCK, J., took no part in the consideration or decision of this case.

Civil action, before *McElroy, J.*, at May Term, 1933, of Henderson.

On 1 August, 1926, the Guaranty Title and Trust Corporation entered into a collateral trust indenture with the Citizens Bank of Norfolk, Virginia, trustee. This document is voluminous, but recites that the Guaranty Company "has determined . . . to create and issue in the manner and form as provided in this indenture its certificate to be known as the Guaranteed Collateral Trust Gold Certificates of the company without limit as to amount; . . . and whereas the certificates are to be issued in series, each series to be limited to the principal amount of not to exceed $1,000,000; and whereas the payment of the principal and interest of the certificates is to be guaranteed by the National Surety Company; . . . and whereas, in order to secure the payment of the principal and interest of all the certificates at any time issued and outstanding under the indenture, . . . the company . . . has determined to execute to the Citizens Bank of Norfolk, Virginia, as trustee, . . . an indenture . . . and to pledge and assign thereunder as security for the respective series of certificates collateral of the character hereinafter referred to." Section 2, Article II, of said indenture provides that "all securities now or hereafter assigned, transferred, pledged, delivered, and set over unto the trustee shall be promissory notes and bonds duly executed by individuals, firms, or corporations, secured by first mortgages or deeds of trust upon improved real property owned in fee simple by the respective makers of the notes," etc. The Guaranty Company guaranteed to the holder the payment of all of said notes or bonds.

The trustee had the power in its discretion to foreclose the mortgages or deeds of trust or to assign or sue upon any or all of the securities in its own name as if it were the beneficial owner thereof. It was further provided that the trustee "shall at all times, upon request of the company, accept from any debtor the amount owing upon any security deposited with the trustee." It was further provided that "the company will well and truly, on or before the 20th day of each month during the continuance of this trust indenture, and so long as any of the certificates are outstanding, give notice in writing to the trustee . . . of any and all defaults in the payment of principal or interest upon any of the securities deposited with the trustee . . . which may be continued sixty days prior to the first of such month, and for such purpose the trustee will from time to time inform the company with respect to any and all collections made by it on account of principal or interest," etc. It was further provided that "the trustee may exercise its powers and perform its duties by or through and may select and employ agents, attorneys, etc., and may in all cases pay to them or any of them such reasonable compensation as it deems proper," etc. . . . The trustee may appoint the company its agent for the collection of any moneys due

to the trustee for principal or interest on the securities pledged hereunder, etc. Also, a portion of section 3, page 62, reads as follows: "Or if, for any reason, the company shall refuse, or be or become unable, to act as agent for the trustee for the collection of moneys due the trustee for principal of or interest on the securities pledged hereunder, the trustee shall be entitled to fair and reasonable compensation (over and above any and all other compensation to which it would otherwise be entitled hereunder) for any services it may render, or shall by the terms of this trust indenture be required to render in the execution of the trust hereby created, in addition to the services ordinarily required of it had such default, refusal, or inability to act not occurred."

On 16 August, 1926, George B. Lazarus negotiated a loan of $5,500 from the Guaranty Title and Trust Corporation of Norfolk, Virginia. This loan was evidenced by seven notes or bonds, all dated 16 August, 1926. The first three bonds were in the sum of $500.00 each, and the last four in the sum of $1,000.00 each. Each of said bonds was payable to bearer "at the office of the Guaranty Title and Trust Corporation of Norfolk, Virginia." The first bond for $500.00 matured 16 August, 1928, and the second bond matured 16 August, 1929. These notes were deposited in the hands of the Citizens Bank of Norfolk, Virginia, on 23 November, 1926, under and by virtue of the terms of the trust indenture hereinbefore mentioned, along with many other bonds and notes of like character, totaling a large sum. Each of the Lazarus bonds had attached to it interest coupons in the sum of $15.00.

After procuring the money Lazarus began making payments upon the indebtedness. When the first bond for $500.00 matured on 16 August, 1928, Lazarus paid the same in full to the Guaranty Title and Trust Corporation and received from said corporation the said bonds marked "canceled," and with the following words stamped thereon: "Paid Guaranty Title and Trust Corporation, Norfolk, Virginia." Lazarus also paid thirty-five interest coupons to the Guaranty Title and Trust Company, and each of said coupons was returned to him by said Guaranty Corporation marked "canceled" and stamped thereon "Guaranty Title and Trust Corporation of Norfolk, Virginia," etc. Lazarus testified as follows: "When the notes were due, or about ten days before they were due, I always got a letter from the office of the Guaranty Title and Trust Corporation of Norfolk, Virginia, . . . and I always sent the money on that date, and they would send me a receipt and coupon of what I paid. . . . After I paid the money I would later on receive coupons through the mail."

On or about 12 April, 1929, the defendant Lazarus applied to the plaintiff Insurance Company for a loan of $8,000 on his property. In order that the plaintiff should have a clear title it was necessary to pay off the loan of $5,000 to the Guaranty Title and Trust Corporation.

3—207

Thereupon, on 1 April, 1929, Lazarus wrote a letter to the Guaranty Title and Trust Corporation, as follows: "I am contemplating leaving this part of the country and liquidating all my business here and would like to straighten up that loan for $5,000 on my house. The number of the loan is 3492. Kindly let me know at once how soon I can take this off." On 3 April, 1929, the Guaranty Title and Trust Corporation, through its vice president, Virginius Butt, replied to the Lazarus letter as follows: "Answering your letter of 1 April, relative to retiring your loan at Hendersonville, we have communicated with the holders of your notes, who agree to accept retirement of the unpaid balance, aggregating $5,000, for a premium of three per cent, or $150.00 Your check in the principal amount of $5,300, with interest on $5,000 from 16 February, 1929, to date of remittance should be forwarded to us at your convenience and the notes will be returned." Thereafter, on 2 May, 1929, the attorneys for Lazarus duly sent a check for $5,365, payable to the Guaranty Title and Trust Corporation. There was a notation on the check to the effect that it was in payment for the balance of principal, interest and anticipation fee of $300.00. This check was duly deposited by the Guaranty Corporation to its credit in the Seaboard Citizens National Bank of Norfolk, and on 4 May the Guaranty Corporation acknowledged receipt of check to the attorneys of Lazarus, stating in the letter, "Instructions are going forward to our accounting department today to forward notes, deed of trust and insurance policies, which will probably be mailed on Monday."

Lazarus did not receive his papers and the Guaranty Title and Trust Corporation was placed in the hands of a receiver on 25 June, 1929, and afterwards became a bankrupt.

The Citizens Bank of Norfolk, Virginia, was duly merged with the Seaboard Citizens National Bank of Norfolk, and under and by virtue of provision in the trust indenture the said Seaboard Citizens National Bank became the successor trustee to the original trustee named in the indenture.

Lazarus made ten payments to the Equitable, and testified subsequently: "A man came in and asked me about the loan and said he represented the Guaranty Title and Trust Company, and said it hadn't been paid. . . . After I found out about it, I did not make any more payments to the Equitable. . . . No one ever sent me any notice to pay anything on this mortgage after Mr. Taylor sent this money; they haven't until this day."

On 13 April, 1931, the Equitable Life Assurance Society of the United States instituted this suit against Lazarus, the trustee in bankruptcy of the Guaranty Title and Trust Company, the Seaboard Citizens National Bank of Norfolk, and all other persons having interest in the transaction for the purpose of foreclosing its deed of trust and for re-

moving and canceling the deed of trust securing the loan to the Guaranty Title and Trust Corporation as a cloud upon the title.

When the cause came on for hearing a jury trial was waived and all parties "consented that the matter may be presented to and heard by the trial judge, and if there develops on the trial any disputed question of fact, then the parties agreed that the trial judge might find the facts and answer the issues to be submitted for that purpose." There was a certain stipulation in the record which has no bearing on the decision in this case.

The trial judge heard the evidence and submitted two issues, as follows:

1. "Have the Lazarus notes and deed of trust, being those in controversy in this action and now held by the defendant Seaboard Citizens National Bank, trustee, been legally paid and discharged, as alleged in the complaint?"

2. "If not, what amount is due said Seaboard Citizens National Bank, trustee, on account of said notes and deed of trust?"

The trial judge answered the first issue "No," and the second issue "$5,000, with interest from 16 February, 1929." The record, however, discloses the following: "After hearing the evidence and argument of counsel, the court held that, as a matter of law arising upon all the evidence, . . . the payment to the Guaranty Title and Trust Company did not operate to discharge the bonds held by the Seaboard Citizens National Bank, as trustee, and answered the issues as appears in the record."

Certain evidence with respect to dealings and transactions between the trustee bank and the Guaranty Title Corporation was offered at the trial.

A. W. Lee, assistant treasurer of the Guaranty Title and Trust Corporation, testified that "Mr. Lazarus made payments on his principal and interest to the Guaranty Title and Trust Corporation. . . . We sent out notice ten days prior to the maturity, and if they were not paid our collection department followed them up with letters. The company pursued the matter of those collections by letter. Such notices were sent to Mr. Lazarus; he responded to them. . . . The Guaranty Title and Trust Corporation always paid the coupons and bonds which had matured when the bank sent them over. . . . We sent out notices and also followed up the collection in cases where the installments were not paid when due. . . . We then once a month received a list from the Citizens Bank (now defendant Seaboard Citizens National Bank) setting forth what installments were paid. I am not quite clear that it showed what installments had not been paid. . . . The Guaranty Title and Trust Corporation never at any time had possession of this collateral until it paid the trust department of the bank for it."

Hugh G. Brown, assistant to the trust officer of the defendant Seaboard Citizens National Bank, testified: "We presented these bonds for payment as well as all other bonds that were pledged to secure Series A bonds of the Guaranty Title and Trust Corporation about every thirty, sixty or ninety days. . . . We did not make any effort to collect the collateral from the makers of various notes or bonds prior to 25 June, 1929, which is the date on which the Guaranty Title and Trust Corporation was placed in the hands of a receiver. We had not notified Mr. George B. Lazarus that the bank held his bonds in trust. We had not notified any of the borrowers whose notes we held that they were held by us in trust. The only effort we made to collect was from the Guaranty Title and Trust Corporation's guaranty up until the time it failed. I presumed that the Guaranty Title and Trust Corporation was making collections on these collaterals. Well, I do not know that we would say they were making collections. I presume the borrowers were putting their money there to meet the obligations which they had signed and made payable to the Guaranty Title and Trust Corporation. . . . I had a presumption of what was going on. . . . The trustee bank did not set up any arrangement for making collection from the borrowers individually prior to the failure of the Guaranty Title and Trust Corporation. . . . We knew that these notes had to be paid, and expected them to be paid. I did not say that we were relying on anyone in particular to make collections from the borrowers. . . . Well, it was presumed somebody had to do it. We knew that we weren't doing it, and we knew that we had not appointed an agent to do it, and I presume that we knew if anybody was doing it, it was the Guaranty Title and Trust Corporation. . . . I presume they were making them. I did not inquire to find out if the Guaranty Title and Trust Corporation was making the collection. . . . The natural presumption was in the regular course of business that the Title Company was doing it." There was other evidence that the Guaranty Title and Trust Corporation received payments of interest promptly and sometimes held the money for various periods of time, ranging from two to six months, before paying same over to the trustee.

From judgment rendered, plaintiff and Lazarus appealed.

*Bourne, Parker, Arledge & DuBose for plaintiff.*

*Redden & Redden for George Lazarus and wife.*

*James L. Taylor, Jr., trustee, in propria persona.*

*Johnson, Smathers & Rollins for Seaboard Citizens National Bank of Norfolk, Virginia, trustee; Greyling Realty Corporation, and National Surety Company.*

BROGDEN, J.  Was there any competent evidence that the Guaranty Title and Trust Corporation was the agent of the Seaboard Citizens National Bank, trustee, holder, in making collections upon the Lazarus notes?

Manifestly, if the Guaranty Title and Trust Corporation was the collecting agent of the Seaboard Citizens National Bank, the holder, then the payment by Lazarus to such agent constituted payment to the holder.  A jury trial was waived, and it was agreed by all parties that the judge should find the facts.  Pursuant to such stipulation the judge answered certain issues appearing in the record.  There was evidence to support the answers so made to such issues.  Consequently, nothing else appearing, the judgment should be affirmed, because "parties can have their causes tried by jury, by reference, or by the court.  They may waive the right of trial by jury by consenting that the judge may try the case without a jury, in which event he finds the facts and declares the law arising thereon. . . . His findings of fact are conclusive, unless proper exception is made in apt time that there is no evidence to support his findings or any one or more of them. . . . The findings of fact by the judge, when authorized by law or the consent of parties, are as conclusive as when found by a jury, if there is any evidence." *Buchanan v. Clark,* 164 N. C., 56, 80 S. E., 424.  See, also, McIntosh's North Carolina Practice and Procedure, sec. 517. However, the record discloses that at the conclusion of all the evidence and argument of counsel "the court held that as a matter of law . . . the payment to the Guaranty Title and Trust Company did not operate to discharge the bonds held by the Seaboard Citizens National Bank as trustee."  Therefore, if there is any evidence of agency in the record, the judgment was improvidently entered, and must be reversed.

This Court is of opinion that there is such evidence of agency.  The trust indenture between the Guaranty Corporation and the bank is an intricate and voluminous document, disclosing in minute detail the whole scheme of lending money and the business methods and procedures involved in the multitude of transactions.  By virtue of the indenture the bank received hundreds of notes, including those of Lazarus.  Attached to these hundreds of notes were more hundreds of interest coupons.  Indeed, the trust agreement tends to show that the Guaranty Corporation selected the bank to act as trustee and was at all times a depositor of the bank.  From the volume of business involved it would not be unreasonable to infer that the bank regarded the trust indenture as a happy and profitable banking connection.  The trust document expressly empowered the trustee to employ agents and to pay them such reasonable compensation as it deemed proper.  Moreover, the bank, as trustee, was authorized to appoint the Guaranty Company "its agent

for the collection of any moneys due to the trustee . . . on the securities pledged hereunder." Furthermore, it was also provided that if the Guaranty Company "shall refuse . . . or become unable to act as the agent for the trustee, for the collection of moneys due to the trustee," . . . then such trustee was to receive "fair and reasonable compensation for any services it may render."

For a period of practically three years Lazarus made payments of interest to the Guaranty Corporation. The bank received this money without protest or inquiry and turned over to the Guaranty Corporation such interest coupons. In addition, Lazarus paid one principal note of $500.00. The bank received this money without protest or inquiry and turned the note over to the Guaranty Corporation. The bank knew at all times for approximately three years that the Guaranty Corporation was collecting principal and interest from Lazarus and others, and that it maintained a collection department for the express purpose of collecting principal and interest from hundreds of borrowers whose notes were in the possession of the bank. Indeed, Brown, the trust officer of the bank, said on cross-examination: "I presume that the Guaranty Title and Trust Corporation was making collections on these collaterals. . . . I had a presumption of what was going on. . . . I presumed they were making them."

While the authorities are not in agreement upon the question, this Court has spoken in several cases. The latest utterance is *General Motors Acceptance Corporation v. Fletcher*, 202 N. C., 170, 162 S. E., 234, in which it is held "that where there is evidence tending to show that an alleged agent has repeatedly collected money owed to the alleged principal, and that the alleged principal has received the money and applied it to the debts, the inference is permissible that the agreement to that effect had been made by and between them, and that the evidence is sufficient to make out a prima facie case of agency." See, also, *Buckner v. C. I. T. Corporation*, 198 N. C., 698, 153 S. E., 254; *Credit Co. v. Greenhill*, 201 N. C., 609, 161 S. E., 72.

The trustee relies upon *Baldwin v. Adkerson*, 156 Va., 447. The opinion discusses the question with great clarity and assembles the authorities upon the various aspects of law involved. The Court said: "There are many cases in which the course of dealings of the holder of a note himself with a bank or loan broker at whose office the note was payable has been held to give the bank or loan broker implied authority to receive payment of the note as the agent of the holder, even though the bank or broker did not have possession of the note. (Citing many authorities.) But these cases have no application to the case at bar. No course of dealings between Adkerson and Guaranty Title and Trust Corporation are shown, and the record discloses no transaction or inter-

course of any kind between these parties, except the bare fact that Adkerson purchased this one note, and perhaps that he presented one interest coupon at its office, where it was payable, and received payment thereof." Obviously, the decision is correct, and in accordance with the weight of authority upon the facts disclosed by the opinion.

As there is competent evidence of agency, and as the trial judge answered the issues as a matter of law, it necessarily follows that the judgment so rendered must be reversed.

Reversed.

SCHENCK, J., took no part in the consideration or decision of this case.