Civil action to restrain the defendants from constructing a municipal hydroelectric plant, fully described in the pleadings, and from issuing revenue bonds to finance a part of the cost.
Following the decision in Williamson v. High Point, 213 N.C. 96,195 S.E. 90, wherein it was held that the hydroelectric system there contemplated was in excess of the defendant's authority, the council of the city of High Point, on 27 April, 1938, adopted another resolution designed to delimit the undertaking to the periphery of its powers. (This resolution was the subject of a second appeal, reported in 214 N.C. 693,200 S.E. 388.)
Thereafter, on 2 May, 1938, the present action was instituted by J. W. McGuinn, on behalf of himself and other taxpayers, to restrain the project as extra-legal. Later, on 18 May, 1938, the Duke Power Company, as taxpayer and holder and user of nonexclusive electric franchise in the city, was permitted to intervene, and to file a separate complaint, which it did.
Then, on 20 March, 1939, the council of the city of High Point adopted an amendatory and supplemental resolution with a view to meeting the requirements of the Federal Emergency Administration of Public *Page 452 
Works for obtaining a Federal grant to defray a part of the costs of the project, and providing for the issuance of revenue bonds, "payable solely out of the revenues of the system," to cover the balance. By further resolution adopted on the same day, the council accepted from the Federal Power Commission license for the construction and operation of the project and agreed "to abide by all the provisions and conditions of the Federal Power Act and all the conditions imposed in the said license." Following the adoption of these resolutions, the Duke Power Company, by leave of court, filed an amended complaint challenging the right of the defendants to proceed in accordance with the resolutions and license.
On 11 April, 1939, a group of plaintiffs designated as "Adams-Millis Corporation and others," users and consumers of electric power in the city of High Point, instituted a separate action to enjoin the defendants from proceeding with the project, which action was later consolidated with the suit suit judice and treated as an intervention herein.
On the hearing, it was agreed by all the parties that a jury trial should be waived, and that the whole matter should be submitted to the court for final determination, both as to the law and the facts.
In summary, the essential determinations and conclusions of the court follow:
1. That the plaintiffs and interveners are taxpayers in the city of High Point with combined taxable properties situate therein of approximately $7,000,000; that the Duke Power Company is the owner and user of a nonexclusive electric franchise under which it has been doing business for a number of years, furnishing the entire electric requirements of the defendant city, its residents and industrial enterprises.
2. That the defendant city of High Point is a municipal corporation, duly chartered under the laws of the State of North Carolina, and now owns and operates within its limits an electric distribution system, through which it distributes to the users within the city, at a large annual profit, electric current which it purchases at wholesale from the Duke Power Company, and that the remaining defendants constitute the city council and the board of power commissioners of the defendant city.
3. That the city of High Point is preparing to construct an electric power plant and system which will comprise: (a) a dam, storage reservoir and generating plant on the Yadkin River at or in the vicinity of Styer's dam site, about 25 miles from High Point, which generating plant would have three generating units with a total capacity of 21,000 kilowatts; (b) a substation at the generating plant, and a substation in the city of High Point; (c) transmission lines extending from the generating plant through the counties of Guilford, Forsyth and Davidson to the city of High Point; (d) a distribution system in the city of High *Page 453 
Point, and (e) other structures and facilities incidental to the foregoing.
4. That the output of the proposed plant would furnish electricity to the city of High Point for municipal uses, and to consumers within the city for domestic, commercial and industrial purposes. It is to be deemed and treated as separate and distinct from the present electric distribution system of the city, and the city is to purchase its electric current from the system for resale and distribution over its present electric distribution system.
5. That the plant and system is to be built and operated by the city of High Point under a Federal power license issued 10 March, 1939, by the Federal Power Commission in which the Commission retains complete control over the entire plant and system, including its construction, maintenance and operation, and extending to every facility directly or indirectly connected with the project, to all policies of management, financing, accounting, rate of return on the net investment after the first twenty years, etc; that the city is to pay to the United States, as reimbursement for the costs of administration, an annual charge based upon capacity and kilowatt hours of energy generated, obligates itself to maintain the project in a condition of repair adequate for purposes of navigation and under such rules and regulations as the Secretary of War may prescribe in the interest of navigation and such as the Secretary of Commerce may prescribe for the protection of fish life, and agrees to assume all liability for damages occasioned to the property of others by the construction, operation or maintenance of the project; that the license is to run for a period of fifty years, at the expiration of which the United States is to have the optional right to take over the enterprise at a price to be fixed by the Federal Power Commission, or to transfer it to a new licensee, in either of which events the city is to make good any defect in title to any rights of user and to discharge all liens arising subsequent to the issuance of the license.
6. That the order of the Federal Power Commission granting the license is based upon its findings and conclusions that "The Yadkin River is a part of the Yadkin-Pee Dee River, an interstate waterway used and suitable for use for the transportation of persons and property in interstate or foreign commerce"; that "The interest of interstate or foreign commerce will be affected by such proposed construction"; that "The project, including the maps, plans, and specifications supplemented and revised as hereinafter provided, is best adapted to a comprehensive plan for improving or developing the Yadkin-Pee Dee River for the use or benefit of interstate or foreign commerce, for the improvement and utilization of water power development and for other beneficial public uses, including recreation purposes"; and that "The project is desirable and justified in the public interest for the purposes of *Page 454 
improving or developing the Yadkin-Pee Dee River for the use or benefit of interstate or foreign commerce." The license recites that the Yadkin River is "A stream over which Congress has jurisdiction under its authority to regulate commerce with foreign nations and among the several states."
7. That the city of High Point has voluntarily consented to the findings and conclusions of the Federal Power Commission and has agreed "to abide by all the provisions and conditions of the Federal Power Act and all the conditions imposed in said license."
8. That the defendants hope to finance the construction of the proposed plant and system in part by a grant to be made by the Federal Emergency Administrator of Public Works in an amount not to exceed the sum of $2,921,600, and in part by the proceeds of bonds to be issued by the city under the resolution of the city council adopted 27 April, 1938, as amended by the resolution adopted 20 March, 1939, which bonds in an amount not to exceed $3,571,000 will be purchased by the Federal Emergency Administration of Public Works pursuant to the offer of 7 February, 1939, and accepted by resolution of the city council adopted 13 February, 1939.
9. That the proposed plant would be located on the Yadkin River approximately 313 miles upstream from the mouth of the Yadkin-Pee Dee River, and approximately 137 miles upstream from the North Carolina-South Carolina line, the distance in each case being measured as the river flows; and that there are now located on the Yadkin-Pee Dee River in North Carolina and between the site of the proposed plant and the North Carolina-South Carolina state line the following power plants: the High Rock plant; with a head of 60 feet and a storage of 232,000 acre feet; the Narrows plant, with a head of 179 feet and a storage of 155,000 acre feet; the Falls plant, with a head of approximately 49 feet and a storage of 3,900 acre feet; the Norwood (Tillery) plant, with a head of 70 feet and a storage of 96,000 acre feet; and the Blewett plant, with a head of 50 feet and a storage of 22,000 acre feet.
10. That the Yadkin-Pee Dee River in North Carolina is not now, and never has been, either by itself or by uniting with other waters, capable of navigation for the movement of trade and traffic in interstate or foreign commerce; that in its natural condition and in its present condition it is now, and always has been, a nonnavigable river of the State of North Carolina.
11. That the total cost of the undertaking will exceed by a million dollars the aggregate amount of the Federal grant and the proceeds of the revenue bonds authorized by the resolution of 27 April, 1938, as amended by the resolution of 20 March, 1939, which excess may not be expended without approval of the voters of High Point; and that the *Page 455 
city has agreed to complete the project not later than 15 June, 1940, under an agreement constituting an unqualified obligation.
[NOTE: By resolution of the board of power commissioners of the city of High Point (successors to the city council in the premises, ch. 600, Public-Local Laws 1939), adopted 7 November, 1939, at the instance of the Federal Works Administrator following an offer of the United States to amend the loan and grant agreement, the city, agrees to complete the project within fifteen months after the resumption of construction following this litigation, with the proviso that "it assumes no obligation to expend in the construction of the project any funds except funds received by way of loan and grant under this offer."]
12. That the constructions, maintenance and operation of the proposed plant and system would not materially or appreciably affect the navigable capacity of any part of the Yadkin-Pee Dee River, which is in fact navigable or capable of navigation, for the movement of interstate or foreign trade and traffic, and would not affect the interest of interstate or foreign commerce.
13. That the city of High Point has not obtained from the Public Utilities Commission of North Carolina a certificate of convenience and necessity for the construction and operation of the proposed plant and system.
Upon these findings, the court concluded (1) that the city of High Point exceeded its authority in applying for and accepting the license from the Federal Power Commission; (2) that the proposed revenue bonds would constitute a general indebtedness of the city; (3) that the agreement to complete the project within a given time creates a binding obligation "at least to the extent that the cost of constructing and completing said plant and system will exceed the amount of said grant and bonds"; (4) that the city cannot lawfully proceed with the undertaking without first obtaining a certificate of convenience and necessity from the Public Utilities Commissioner of the State of North Carolina. Whereupon, injunction was granted in accordance with the prayer of the plaintiffs and interveners. The defendants duly noted exceptions, and from the judgment entered, they appeal.
At the threshold of the case, it may be well to recall that a municipality is limited in its authority to venture upon an enterprise such as here contemplated. Its powers are different from those usually granted to a public-service corporation, for its serves a single community while the latter may serve many. Nevertheless, the authority of a municipality is generally ample for its own purposes. Lutterloh v. Fayetteville,149 N.C. 65, 62 S.E. 758; George v. Asheville, 80 F.2d 50, 103 A.L.R., 568.
Further, by way of preliminary observation, it may be noted that where the parties agree to waive a jury trial and submit the whole controversy to the court for final determination, both as to the law and the facts, the findings of fact made by the court pursuant to such agreement have the force and effect of a verdict, and they are conclusive on appeal if supported by any competent evidence. Cobb v. Cobb, 211 N.C. 146,189 S.E. 479; Crews v. Crews, 210 N.C. 217, 186 S.E. 156; Marshall v. Bank,206 N.C. 466, 174 S.E. 314; Roebuck v. Surety Co., 200 N.C. 196,156 S.E. 531. The correctness of the findings may be challenged in the same way as the verdict of a jury. Assurance Society v. Lazarus, 207 N.C. 63,175 S.E. 705. The rule is applicable on the final hearing in injunction proceedings. Power Co. v. Power Co., 171 N.C. 248, 88 S.E. 349. The only modification or departure from this practice will be found in those cases, formerly cognizable exclusively in equity, which are submitted on written and documentary proofs. Worthy v. Shields, 90 N.C. 192. The trial court determines the facts upon contradictory evidence or upon evidence permitting different inferences, as we are not authorized to find the facts in such cases. White v. White, 179 N.C. 592, 103 S.E. 216. The rule is other wise in injunction proceedings when the appeal is from the preliminary hearing, for the findings then are only for the purpose of the interlocutory order, and they are made by the judge without any waiver or consent of the parties. Mewborn v. Kinston, 199 N.C. 72, 154 S.E. 76.
First. The initial question for decision is whether the city of High Point exceeded its authority in agreeing to abide by all the conditions imposed in the license issued by the Federal Power Commission for the construction, operation and maintenance of the hydroelectric project here challenged. The record would seem to require an affirmative answer.
It is the position of the plaintiffs that the functions of the Federal Power Commission and those of the city of High Point are not only separate and distinct, but that they are also different in scope and purpose, if not in character and kind; that the one derives its authority from the Congress; the other from the State Legislature; that the one deals with national issues; the other with local matters. And while in certain instances, it is conceded the activities of the latter may properly *Page 457 
complement those of the former, it is asserted that on the present record, a case of complete domination and control on the part of the Federal Power Commission is presented. The plaintiffs challenge the right of a municipality to assume such a role of subjectivity in the absence of legislative sanction, express or implied. Madry v. Scotland Neck,214 N.C. 461, 199 S.E. 618; Coburn v. Comrs., 191 N.C. 68,131 S.E. 372; Henderson v. Wilmington, ib., 269, 132 S.E. 25; Weithv. Wilmington, 68 N.C. 24. They say that the city of High Point is clothed with no authority and charged with no duty in connection with interstate or foreign commerce, City of Chicago v. Law, 144 Ill. 569,33 N.E. 855; that it is not primarily interested in the promotion of navigation or in the protection of fish life in the waters of the Yadkin River, desirable as these may be; that its obligations are exclusively to the residents, citizens and taxpayers of High Point, and that therefore the acceptance of the Federal license goes beyond the reach of the defendant's authority and may even be incompatible with its duties as a municipality. Johnson v. Comrs., 192 N.C. 561,135 S.E. 618; Asbury v. Albemarle, 162 N.C. 247, 78 S.E. 146; Trentonv. New Jersey, 262 U.S. 182; Northern B. L. Assn. v. Cleary,296 U.S. 315, 100 A.L.R., 1403; Worchester v. Worchester Street Ry.Co., 196 U.S. 539; Becker v. La Crosse, 99 Wis. 414, 67 Am. St. Rep., 874.
The cases of Klein v. City of Louisville, 6 S.W.2d 1104, andHaeussler v. City of St. Louis, 205 Mo., 656, 103 S.W. 1034, cited and relied upon by the defendants, are sought to be distinguished on the ground that there specific or implied legislative authority for what was done — bridges constructed over navigable streams forming state boundaries — while no such authority appears here. Likewise, it is pointed out that in State ex rel. Gummer v. Pace, 164 So. (Fla.), 723, cited by the defendants, there was legislation with reference to the navigable waters there involved.
The arguments of the plaintiffs prevailed in the court below and they have been pressed with vigor here. They appear to be sound and worthy of acceptation. Kennerly v. Dallas, 215 N.C. 532, 2 S.E.2d 538. A municipality is not permitted to travel beyond the scope of its charter or in excess of the powers granted to it by the General Assembly.
In this view of the matter, the navigability or nonnavigability of the Yadkin-Pee Dee River may be put aside as an incidental issue in the case.Ashwander v. Valley Authority, 297 U.S. 288. However, it appears from the determinations made by the trial court that the Yadkin-Pee Dee River is a nonnavigable stream in North Carolina, and that the construction, maintenance and operation of the proposed hydroelectric plant and system would not materially or appreciably affect navigation or the movement of interstate or foreign commerce. Upon these findings, *Page 458 
which are amply supported by the evidence and predicated upon a number of prior adjudications, it would seem that the Federal Power Commission is without jurisdiction in the premises, and that its license should be regarded as gratuitous, especially in the extent to which it goes. Smith v.Ingram, 29 N.C. 175; S. v. Glen, 52 N.C. 321; Cornelius v. Glen, ib., 512; Dunlap v. Light Co., 212 N.C. 814, 195 S.E. 43; U.S. v. RioGrande Irr. Co., 174 U.S. 690; U.S. v. Appalachian Electric Power Co.,107 F.2d 769.
In this latter circumstance, the defendants say on brief that the license of the Federal Power Commission should be treated as a nullity, being void ab initio, and that they should be permitted to proceed as if the license had not been issued. The record fails to present such a case. It is alleged in the answer that application was duly made to the Federal Power Commission for the license in question; that the city has a right to proceed under it, and that it intends to do so. Upon this theory the case was heard in the court below. Indeed, without questioning the authority of the Federal Power Commission, the defendants have apparently agreed to make its license an integral part of the undertaking as presently contemplated.U.S. v. Butler, 297 U.S. 1. The record contains no disclaimer of its obligations on the part of the defendants, but rather an insistence upon their legality and a determination to abide by them. The case is controlled by the transcript on appeal, S. v. Dee, 214 N.C. 509, 199 S.E. 730, except in situations similar to the one hereafter considered in section three. Berrier v. Comrs. of Davidson County, 186 N.C. 564, 120 S.E. 328.
Moreover, the Federal Power Commission is not a party to the proceeding, and the validity of its license is not an issue in the case. The inquiry goes only to the authority of the city of High Point to agree to abide by its terms and conditions, and thus to embark upon the enterprise practically as an adjunct of the Federal agency and primarily for purposes of national concern. On the record as presented, the project and the Federal license are inseparably connected. Covington v. Threadgill,88 N.C. 186; Hazelton v. Sheckels, 202 U.S. 71; McMullen v. Hoffman,174 U.S. 639. A municipality is confined to the circumference of its powers. Briggs v. Raleigh, 195 N.C. 223, 141 S.E. 597.
Second. The next question is whether the proposed revenue bonds would constitute a general indebtedness of the city of High Point. This was the subject of considerable discussion on the first appeal in the Williamsoncase, 213 N.C. 96, 195 S.E. 90, which need not be repeated here.
Since that decision, the General Assembly has by general enactment, ch. 2, Public Laws, Extra Session, 1938, authorized the municipalities of the State to construct, improve and extend "revenue-producing *Page 459 
undertakings" of various kinds, including hydroelectric plants or systems, and to finance them with funds derived from the sale of revenue bonds, payable solely out of the revenues of the undertaking. The statute is denominated the "Revenue Bond Act of 1938," and it sets out in detail the terms and conditions under which such revenue bonds may be issued and prescribes the remedies afforded the bondholders. Compulsory exercise of the taxing power is specifically withheld as a means of enforcing liability on any covenant or bond of the municipality given or issued in connection with the undertaking. The remedies of mandamus, mandatory injunction and receivership are alone designated as available to the creditors. George v.Asheville, supra. This act ex proprio vigore enters into and becomes a part of the bonds issued under its provisions. Bank v. Bryson City, 213 N.C. 165,195 S.E. 398. The power to borrow money or to deliver bonds under the act is prohibited after 31 December, 1940, except in furtherance of a contract or agreement theretofore entered into by the municipality.
In addition to the benefits of this act, it is the contention of the defendants that by resolution of the city council embodying similar provisions, revenue bonds of like character may be issued under the city charter or the Revenue Bond Act of 1935, ch. 473, Public Laws 1935, and that the bonds here challenged come within the authorization of either or both statutes. We had occasion to consider the limitations of the Revenue Bond Act of 1935 in the Williamson case, supra.
One of the ends sought to be accomplished by the amendatory and supplemental resolution of 20 March, 1939, as we understand it, was to make sure the terms and conditions of the bonds proposed to be issued by the city of High Point would not exceed the provisions approved inBrockenbrough v. Comrs., 134 N.C. 1, 46 S.E. 28, as coming within the special-fund doctrine and to remove them, beyond all peradventure, from the category of general indebtedness. In this endeavor the defendants have called to their aid provisions of the Revenue Bond Act of 1938. Taken in connection with the further resolution of the board of power commissioners adopted 7 November, 1939, it would seem that as the bonds are to be "payable solely out of the revenues of the system," they might well be held as coming within the special-fund doctrine, and not as general obligations of the municipality importing liability to taxation. Gill v. Charlotte,213 N.C. 160, 195 S.E. 368; Hall v. Redd, 196 N.C. 622, 146 S.E. 583. See 16 N.C. L., 346. The bonds themselves are to contain specific provision to this effect, and, hence, the bondholders will be put on notice that they have no right to compel the levy of any tax to enforce payment of principal or interest. Ward v. City of Chicago, 342 Ill. 167.
The stipulation that the city will not purchase, for resale through its *Page 460 
presently owned electric distribution system, electric energy from any source other than the proposed system, when and so long as energy from the system is available, comes well within the special-fund doctrine, for the energy so taken and used is to be paid for solely out of the gross revenues of the presently owned electric distribution system and is to be considered simply as an expense of operating this latter system. Holmes v.Fayetteville, 197 N.C. 740, 150 S.E. 624; Plant Food Co. v. Charlotte,214 N.C. 518, 199 S.E. 712; Allison v. Chester, 72 S.E., (W.Va.), 472.
The further stipulation that if the city shall, from time to time, voluntarily elect to take electric energy from the system for its own use, it will pay to the special account an amount equal to the cost of furnishing the electric energy so taken — in no event to exceed a fair and reasonable amount for such energy — is not a covenant importing liability to taxation available to the bondholders, but rather an assurance or undertaking on the part of the city to pay for such energy as a necessary municipal expense out of current revenues, for the service rendered, and is not to be regarded as payment on the cost of the enterprise. Walla Walla v. Walla Walla Water Co., 172 U.S. 1; Penningtonv. Town of Summer, 222 Iowa 1005, 270 N.W. 629; Reconstruction FinanceCorp. v. City of Richmond, 249 Ky. 787; Annotation, 103 A.L.R., 1160. The provision is not that the city shall pay for such energy, if, as and when taken, at the regular rate so as perhaps to include a profit, but the amount to be paid into the special account is limited to an amount equal to the cost of furnishing the electric energy so taken, and in no event to exceed a fair and reasonable amount for such energy. The stipulation is specifically authorized by the Revenue Bond Act of 1938. Wells v. HousingAuthority, 213 N.C. 744, 197 S.E. 693. Its purpose is to guard against any outlet for "free service." Georgia v. Regents of University System,179 Ga. 210, 175 S.E. 567; Keller v. State Board of Education, 236 Ala. 400,183 So. 268.
The authorities from other jurisdictions cited by plaintiffs, which in tendency seem to point in another direction, are grounded on different factual bases and are therefore distinguishable. To point out these differences in detail, however, would require an unnecessary amount of diffentiation with no commensurate benefit to be derived from the undertaking. Suffice it to say they are not controlling.
It should be observed that what is here said in respect of the liability arising from the issuance of the proposed revenue bonds has no reference to the obligations sought to be assumed by the city in agreeing to abide by all the conditions imposed in the license issued by the Federal Power Commission. These obligations arise out of matters dehors the revenue bond resolutions and hence they stand on a different footing. Being *Page 461 ultra vires, or beyond the city's reach, they have been disregarded in the consideration of the second question presented by the appeal.
Third. The questions arising from the court's determination that the costs of the undertaking will exceed the aggregate amount of the Federal grant and the proceeds of the revenue bonds and that the city's agreement to complete the project within a given time constitutes a binding obligation importing general liability, apparently have been rendered moot by the resolution of the board of power commissioners adopted 7 November, 1939, in which it is provided that the city "assumes no obligation to expend in the construction of the project any funds except funds received by way of loan and grant" from the Federal Government. The terms of this resolution have been accepted and approved by the Federal Emergency Administration of Public Works. See Gulf, Col. S. F. Ry. v. Dennis,224 U.S. 503, and Patterson v. Alabama, 294 U.S. 600; Wilson v. Comrs.,193 N.C. 386; 137 S.E. 151.
Fourth. The question that remains is whether the city of High Point can lawfully proceed with the undertaking without first obtaining a certificate of convenience and necessity from the Public Utilities Commissioner of the State of North Carolina. The trial court answered in the negative and we approve.
It is provided by the Revenue Bond Act of 1938 (ratified 13 August, 1938) that no municipality, "proceeding under this act," shall construct any gas or electric system without having first obtained a certificate of convenience and necessity from the Public Utilities Commissioner, "except that this requirement for a certificate of convenience and necessity shall not apply to any such undertaking defined in this proviso which has been authorized, or the bonds for which have been authorized, by any general, special or local law heretofore enacted."
It is the position of the defendants that they come within the exception to the proviso, above quoted, because the undertaking here challenged was authorized by the resolution of the council of the city of High Point on 27 April, 1938, which was more than three months prior to the ratification of the Revenue Bond Act of 1938. Conceding some attentuate ground for the contention, it is not believed the defendants would want to risk the success of their undertaking alone upon the resolution of 27 April, 1938. They deemed it "advisable to amend and supplement said resolution" by the resolutions of 20 March, 1939, which have been regarded as essential to the project. Indeed, these later resolutions apparently wrought substantial changes in the enterprise. It is not thought that the exception to the proviso in the statute was intended to cover a situation similar to the one here presented. The reason for the requirement, as well as the applicable rule of strict construction, Piedmont and Northern Ry. Co. v. U.S.,30 F.2d 421, would seem to suggest a *Page 462 
contrary intent on the part of the lawmaking body. In this respect, we agree with the ruling of the trial court. Alabama Power Co. v. City ofScottsboro, 190 So. (Ala.), 412.
It results, therefore, from what is said above, that with the modifications suggested, the judgment should be upheld. On the facts established by the record, the correct conclusion seems to have been reached.
Modified and affirmed.